En el Tribunal Supremo de Puerto Rico

| ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEPARTAMENTO DE HACIENDA<br><br>        Demandantes-recurridos<br><br>        V.<br><br>ASOCIACION DE AUDITORES, CONTADORES Y ESPECIALISTAS DEL NEGOCIADO DE CONTRIBUCION SOBRE INGRESOS, ET ALS<br><br>        Demandados-recurrentes | Revisión<br><br>99TSPR20 |
| --- | --- |

Número del Caso: RE-94-265
Ref. AC-94-313

Abogados de la Parte Recurrente: Lic. Peter Ortiz
Lic. René Arrillaga Beléndez

Abogados de la Parte Recurrida: Hon. Pedro A. Delgado Hernández
Procurador General

Lic. Sylvia Cancio Bigas
Procuradora General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. Arnaldo López Rodríguez

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 3/11/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico, Departamento
de Hacienda, et als

    Demandantes-Recurridos


       v.                        RE-94-265        Revisión
                                     Ref. AC-94-313

Asociación de Auditores,
Contadores y Especialistas del
Negociado de Contribución Sobre
Ingresos et als

    Demandados-Recurrentes




PER CURIAM



San Juan, Puerto Rico, a 11 de marzo de 1999


Nos toca hoy examinar las diferencias sustantivas y procesales entre las consecuencias resultantes del desacato civil y el desacato criminal ante la desobediencia a una orden de injunction.

Examinemos los hechos que dan lugar al presente recurso.

I

Los recurrentes de epígrafe, la Asociación de Auditores, Contadores y Especialistas del Negociado de Contribución sobre Ingresos (Asociación), su Presidente Luis Guillermo Zayas y demás oficiales y miembros de la misma, decretaron un paro huelgario indefinido en el Departamento de Hacienda conducente a paralizar el proceso de recaudación de contribuciones sobre ingresos, a

comenzar el miércoles 6 de abril de 1994. Exigían, en síntesis, mejores condiciones de empleo. [1]

En esa misma fecha, el Estado Libre Asociado de Puerto Rico y el Departamento de Hacienda presentaron ante el entonces Tribunal Superior, Sala de San Juan, una Petición de Entredicho Provisional e Interdicto Permanente, mediante la cual solicitaron se le ordenase a la Asociación cesar y desistir del referido paro laboral y de cualquier actividad similar de protesta que pudiese retrasar la función ministerial a ser llevada a cabo por dichos funcionarios. Sostenía el Estado que la referida huelga era ilegal conforme a nuestro actual régimen de derecho, que el servicio prestado por los miembros de la Asociación era de carácter vital, que le acarrearía al erario público grandes pérdidas de dinero ya que, además, tendrían que movilizar empleados de otras divisiones del Departamento y de otras agencias gubernamentales a que prestaran servicio y protección. Invocaron la encomienda constitucional del Departamento de recaudar los tributos que le permiten al Estado una operación gubernamental organizada que, según alegaron, sobrepasa en rango e importancia a cualquier interés individual que pudieran esgrimir los demandados. En síntesis, reclamaron que la descrita huelga habría de causar grave e irreparable daño a la parte peticionaria y a los contribuyentes puertorriqueños.

---

[1] Solicitaba la Asociación que las escalas salariales en el Departamento de Hacienda se igualaran a las de la Oficina del Contralor. Reclamaban además aumentos en dietas y millaje, así como una mayor aportación al plan médico.

A las 7:00 de la noche de ese mismo día, el Tribunal Superior acogió el planteamiento de los demandantes y emitió, sin notificación previa a los demandados, la orden de entredicho provisional solicitada, concluyendo que la referida huelga era ilegal por razón de que el derecho vigente no les reconoce a las asociaciones de empleados públicos organizadas al amparo de la Ley Núm. 174 (sic) de 19 de julio de 1960 el derecho a la huelga. Mediante dicha orden, el Tribunal Superior ordenó a los aquí recurrentes a cesar y desistir inmediatamente de incurrir en las prácticas antes descritas; ordenó al Alguacil del Tribunal o persona particular designada por el Estado, a notificar inmediatamente, de día o de noche, a los demandados con copia de la demanda y de la orden dictada y a notificar a todos los miembros de la Asociación por conducto de sus supervisores. Dispuso, además, la publicación del aviso en un diario de circulación general.[2]

---

[2] Examinados los autos originales surge que los Sres. Luis Guillermo Zayas y Eric Hasselmayer fueron abordados el 7 de abril del 1994 por Frank Currás Salgado y Ángel Rabelo Pérez, personas particulares, respectivamente, cerca de las 11:15 a.m., en la línea de piquetes. En el emplazamiento del señor Hasselmayer se hace constar que éste no quiso recibirlo. En el emplazamiento de Zayas se juramenta que fue emplazado, sin embargo, más adelante en el récord surge una nota del Sr. Currás Salgado a los efectos de que Zayas no quiso recibir el emplazamiento, dejándolo caer al pavimento. Esta nota no es parte del emplazamiento ni está juramentada. Constan otros emplazamientos incompletos y sin juramentar, todos ellos por persona particular. El 8

Se apercibió a los demandados que el incumplimiento de la orden podría dar lugar a que se les pudiese encontrar incursos en desacato criminal. El Tribunal, además, ordenó la comparecencia de los demandados a la referida Sala, a mostrar causa por la cual no debiera convertirse en permanente la anterior orden de entredicho provisional.

El mismo 8 de abril, la parte demandante presentó una "Urgente Moción en Solicitud de Desacato" en la que alegaba que habiendo sido notificados los demandados de la anterior orden, éstos continuaban convocando el paro huelgario y se negaban a retornar a sus funciones. Además, se alegaba en dicha moción que el piquete había continuado durante todo el día 7 y en la mañana del 8 de abril. Acompañaba la referida moción una declaración jurada de José A. López Hernández, Secretario Auxiliar de Administración del Departamento de Hacienda, en la cual aseguraba que en esa mañana había podido observar alrededor de cien empleados del Departamento de Hacienda en el Edificio Intendente Ramírez en la línea del piquete. Solicitaba que el Tribunal declarase a los demandados incursos en desacato. En la tarde de esta última fecha, el Tribunal dictó otra orden donde citaba a los demandados a comparecer al Tribunal el 11 de abril a mostrar causa por

de abril de 1994 se publicó la referida orden en tres

la cual no debían ser encontrados incursos en desacato criminal, advirtiéndoles de su derecho a estar representados por abogado, a presentar prueba en su beneficio y a contrainterrogar a los testigos en corte abierta. Consta en autos que esa orden fue notificada al Sr. Zayas el día 11 de abril de 1994, <u>el mismo día de la vista</u>. No hay constancia de que la misma fuera notificada al Sr. Hasselmayer, ni que esta orden fuese publicada en periódico alguno.

El 11 de abril, en horas de la mañana, se celebró la vista sobre Injunction Permanente, el cual fue decretado sumariamente en corte abierta[3]. Los demandados estuvieron acompañados por el Lic. Demetrio Fernández, quien al momento de comenzar la segunda vista pautada sobre la moción de desacato, informó al tribunal que no estaba

___

periódicos de circulación diaria general.
[3] La cuestión planteada fue una estrictamente de derecho: si los empleados de la Asociación de Auditores, Contadores y Especialistas del Negociado de Contribución sobre Ingresos tenían derecho a organizarse y negociar colectivamente con su patrono por medio de representantes de su propia y libre selección, y por tanto, si les cobija el derecho a la huelga y establecer piquetes y otras actividades legales concertadas durante horas laborables. El planteamiento de la Asociación se basa en que el derecho a la huelga es parte inherente al derecho de libertad de expresión y al de asociarse libremente, además de ser una actividad protegida por las Constituciones del Estado Libre Asociado y Estados Unidos de Norteamérica, y que varias jurisdicciones en Estados Unidos han reconocido a los miembros de las asociaciones de empleados públicos el derecho a la huelga.

preparado para representar a los recurrentes en dicha vista, ya que él había sido contratado para el caso civil de injunction únicamente. Solicitó un tiempo razonable para consultar con su cliente y prepararse para la vista. El tribunal decretó un receso hasta las 2:00 de la tarde. Al reanudarse la sesión los demandados comparecieron acompañados por el Lcdo. René Arrillaga Beléndez, quien informó al tribunal que representaba al señor Zayas en su carácter personal y no a la Asociación y solicitó el aplazamiento de la vista por un término de veinte (20) días pues acababa de ser contratado en ese momento y no estaba familiarizado con la orden de mostrar causa. El tribunal denegó dicha solicitud y decretó un breve receso a los fines de que el Lcdo. Arrillaga Beléndez se preparara para la vista de desacato. Concluido el receso, el licenciado Arrillaga consignó que, a pesar de que iba a continuar con la representación de los demandados, no se encontraba preparado para entrar a la vista.

La prueba vertida en la misma por la parte demandante consistió en el testimonio de la Sra. Darimar Pérez, Directora de Comunicaciones, y del Sr. José A. López, Secretario Auxiliar, ambos del Departamento de Hacienda, y de dos cintas video-magnetofónicas de los incidentes del

paro, según fueran transmitidas por los noticiarios de los canales de televisión 2, 11 y 4. Por la parte demandada se presentó como única prueba el testimonio del periodista Raúl Quiñones. Aquilatada dicha prueba, el tribunal determinó que los señores Luis Guillermo Zayas y Eric Hasselmayer habían sido adecuadamente notificados de la orden de entredicho provisional y que ambos habían violado intencionalmente la misma. En consecuencia, dictó sentencia en corte abierta encontrando a los demandados incursos en desacato criminal, y dispuso castigarlos "para vindicar la majestad de la ley en su autoridad judicial menospreciada" condenando a cada uno de los demandados peticionarios Zayas y Hasselmayer, a pagar una multa de $500.00 cada uno, y a reclusión en cárcel por un término de quince días, disponiendo que la pena de cárcel les sería suspendida bajo la condición de restituir al Departamento de Hacienda dentro del mencionado término todos los gastos en que incurrió dicha agencia como consecuencia del paro ilegal decretado y de reintegrarse inmediatamente a sus labores todos los miembros de la Asociación. También encontró a dicha Asociación incursa en desacato y la condenó al pago de una multa de $500.00. En su sentencia por escrito el tribunal consignó que los demandados se habían sometido a la jurisdicción del tribunal durante la vista civil de

Injunction sin impugnar en ningún momento el diligenciamiento de la notificación de la demanda y de la orden de entredicho provisional.

Como le fuera ordenado, el Departamento de Hacienda presentó un "Informe de Gastos" que detallaba los gastos alegadamente incurridos por el Departamento del 6 al 11 de abril de 1994, los cuales según el informe, ascendieron a la cantidad de $58,338.00. En el mismo se incluyeron las partidas desglosadas para los diferentes conceptos, a saber, Publicación de Avisos ($5,702.00), Guardias de Seguridad ($7,108.00), Policía de Puerto Rico ($2,261.00), Personal Sustituto y Gerencial del Departamento de Hacienda ($32,775.00), Costo de Nóminas Aplicables de 20.63% ($6,761.00), Personal transitorio (traslados) ($3,656.00) y Llamadas de Larga Distancia ($75.00). Los demandados presentaron una "Moción de Reconsideración, Oposición a Memorando de Costas, Solicitud de Vista Urgente y otros extremos" en la cual solicitaron que el tribunal suspendiera los efectos penales de la sentencia aduciendo que el hecho de que no se cuestionara en la vista sobre Injunction la notificación del Sr. Zayas, no implicaba que se admitieran las consecuencias criminales de una adecuada notificación y comprensión de la orden de entredicho; se oponían al monto total del desglose cuestionando algunas

partidas, y solicitaban una vista urgente para dilucidar los planteamientos esgrimidos. El tribunal denegó la solicitud de reconsideración y solicitud de vista de los demandados y aceptó el Informe de Gastos afirmando que el anterior memorando no sustituía las costas contempladas por las Reglas de Procedimiento Civil. Además, ordenó al Departamento informar a cuánto ascendía la suma remesada mensualmente por la Asociación demandada en concepto de cuotas descontadas a los salarios de sus miembros. El Departamento obedeció la referida orden haciendo constar que durante el mes de abril se remesó la cantidad de $1,285.00, aclarando que dicha cantidad variaba de acuerdo al número de socios. El 18 de mayo de 1994 el Tribunal, a iniciativa propia, enmendó la sentencia dictada el 11 de abril a los fines de otorgarle la opción a los codemandados de pagar la suma de $58,338.00 a razón de $425.05 mensuales o una tercera parte (1/3) del importe mensual de la cantidad remesada a la Asociación. Dicha enmienda fue realizada luego de instarse el presente recurso ante este Foro.

Los peticionarios señalan como errores la negativa del tribunal de instancia a suspender la vista de desacato por no haber tenido éstos la oportunidad de prepararse adecuadamente, al imponer unas sentencias excesivas, al

sujetar la pena de prisión a unas condiciones onerosas y de difícil cumplimiento y al no celebrar una vista para considerar la veracidad y razonabilidad de los gastos sometidos por el Departamento.

## II

El auto de injunction en Puerto Rico está gobernado por la Regla 57 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 57 y por los artículos 675 a 689 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 3521 a 3566. Este recurso extraordinario que adoptamos del sistema de equidad inglés va dirigido a prohibir o a ordenar la ejecución de determinado acto, con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en casos en que no hay otro remedio adecuado en ley. Véase, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, Sec. 2942, Vol. 11A (2da ed. 1995 y Sup. 1997). La regla 57, supra, establece tres modalidades de injunction, a saber, el injunction permanente, el injunction preliminar (R. 57.1), y el entredicho provisional (R. 57.2).

En la Regla 57.2, supra, se dispone el procedimiento para la expedición de un auto de entredicho provisional.[4]

---

[4] 57.2 **Orden de Entredicho Provisional; notificación;**

Dicho auto puede ser expedido sin notificación previa al

_____

**audiencia; duración**

Una orden de entredicho provisional podrá ser dictada sin notificación previa a la parte adversa o a su abogado únicamente si (1) aparece claramente de los hechos expuestos en una declaración jurada o en la demanda jurada, que se causarán perjuicios, pérdidas o daños inmediatos e irreparables al solicitante antes de que se pueda notificar y oír a la parte adversa o a su abogado; y (2) si el abogado del solicitante o el solicitante mismo certifica por escrito al tribunal las diligencias que se han hecho, si alguna, para la notificación y las razones en que funda su solicitud para que no se requiera dicha notificación. Toda orden de entredicho provisional concedida sin notificación previa llevará constancia de la fecha y hora de su expedición; será archivada inmediatamente en la secretaría del tribunal y registrada; en ella se definirá el perjuicio y se hará constar porqué el mismo es irreparable y la razón por la cual se expidió la orden sin notificación previa; y de acuerdo con sus términos expirará dentro un período de tiempo después de ser registrada, que será fijado por el tribunal y no excederá de diez (10) días, a menos que sea prorrogado dentro del término así fijado por justa causa probada y por un período de tiempo igual, o a menos que la parte contra la cual se hubiere dictado la orden dé su consentimiento para que sea prorrogada por un período mayor. Las razones que hubiere para tal prórroga se haránconstar en el récord. En el caso en que se dicte una orden de entredicho provisional sin notificación previa, la moción para un auto de injunction preliminar será señalada para ser vista en la fecha más próxima que fuere posible y tendrá preferencia sobre todos los demás asuntos, excepto aquellos que fueren más antiguos y de la misma naturaleza; y cuando la moción sea llamada para la vista la parte que obtuvo la orden de entredicho provisional procederá con su solicitud de injunction preliminar y, si así no lo hiciere, el tribunal la dejará sin efecto. Con dos (2) días de aviso a la parte que obtuvo la orden de entredicho provisional, sin aviso o previo aviso por un término más corto a dicha parte según lo disponga el tribunal, la parte adversa podrá comparecer y solicitar la disolución o modificación de la orden, y en ese caso se procederá a oír y resolver la moción con toda la prontitud que requieran los fines de la justicia.

demandado y sin que éste haya tenido oportunidad de ser oído, cuando de la petición bajo juramento surge causa justificada para ello. Por razón de que este procedimiento afecta el derecho a un debido proceso de ley de la persona contra la cual se emite, sus requisitos son de estricto y riguroso cumplimiento. Para que pueda ser dictado sin notificación previa, se ha de hacer constar, bajo juramento, aquellos hechos que demuestren que se han de causar perjuicios, pérdidas o daños inmediatos e irreparables al solicitante antes de que se pueda notificar y oír a la parte adversa o a su abogado. El solicitante o su abogado, han de certificar por escrito al tribunal las diligencias que hayan hecho, si alguna, para notificar a la parte contraria o a su abogado, y las razones en que funda su solicitud para que no se requiera dicha notificación.

Es de antiguo linaje nuestra interpretación de que la concesión de una orden de injunction, injunction preliminar o entredicho provisional descansa en la sana discreción del tribunal, por lo que la decisión del mismo concediendo o denegando la orden no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional.[5]

---

[5] 32 L.P.R.A. sec. 3522; Delgado v. Cruz, 27 D.P.R. 877, 880 (1919) Véase además, Rivé Rivera, David, *Recursos Extraordinarios*, 2da ed. Programa de Educación Jurídica

La Regla 57.4 trata de la forma y alcance del injunction u orden de entredicho provisional, una vez ya expedida, y de las personas obligadas por ésta. La regla nos dice que la orden deberá expresar las razones para su expedición, que será redactada en términos específicos, describiendo con detalles razonables y no mediante referencia a la demanda u otro documento, el acto u actos cuya realización se prohibe.  La misma será obligatoria para las partes en la acción, sus oficiales, agentes, sirvientes, empleados y abogados y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación.

Surge de los autos que la petición del auto de injunction por el Departamento de Hacienda fue adecuadamente juramentada y habiendo satisfecho todos los requisitos procesales para su expedición, y en ausencia de un claro abuso de discreción, no encontramos fundamento para revocar al tribunal de instancia en cuanto a su decisión de expedir el auto de injunction provisional y permanente en el cual se prohibía a la Asociación el paro huelgario en cuestión.

III

Continua, Universidad Interamericana de Puerto Rico,

La base jurídica para el procedimiento de desacato en Puerto Rico proviene de tres fuentes, según han sido interpretadas por nuestra jurisprudencia, las cuales están fundadas en el poder inherente de los tribunales para hacer cumplir sus órdenes. Los tribunales tendrán poder, entre otros, para mantener y asegurar el orden en su presencia y en los procedimientos ante su consideración, para hacer cumplir sus órdenes, sentencias y providencias y para realizar u ordenar cualquier acto que resulte necesario a fin de cumplir a cabalidad sus funciones. 4 L.P.R.A. secs. 1a y 362a. Para el ejercicio efectivo de las facultades antes enumeradas la ley les autoriza a castigar por desacato. 4 L.P.R.A. sec. 362b.

El artículo 235(b) del Código Penal de Puerto Rico también penaliza la desobediencia a cualquier decreto, mandamiento, citación u otra orden legal expedida o dictada por algún tribunal en un pleito o proceso que estuviere conociendo, estableciendo que será sancionada con pena de cárcel que no exceda de noventa (90) días o multa que no exceda de quinientos dólares ($500.00) o ambas penas a discreción del tribunal. Véase, 33 L.P.R.A. sec. 4431(b). En Pueblo v. Falcón Negrón, 126 D.P.R. 75 (1990), interpretamos que la pena de restitución no podrá ser

aplicada a una sentencia por desacato bajo el Código Penal, toda vez que el desacato no se encuentra dentro de los delitos específicos que el legislador dispuso tuvieran la pena de restitución.  El principio de legalidad exige que no se impongan penas o medidas de seguridad que la ley no hubiese previamente establecido. Véase además, Guzmán, R.A., La Pena de Restitución en el Derecho Puertorriqueño, 54 Rev. Jur. U.P.R. 65, 70 (1985).

El artículo 687 del Código de Enjuiciamiento Civil, enmendado por la Ley 2 de 7 de marzo de 1983, 32 L.P.R.A. sec. 3533[6], establece que la desobediencia a un auto de injunction es penable como desacato por el tribunal. A estos efectos dispone el referido artículo que dicha desobediencia puede ser castigada, a discreción del tribunal,  por multa que no exceda de quinientos dólares ($500.00), restitución inmediata a la persona perjudicada o

---

[6] **Sec.    3533. Penalidad por desobedecer un auto de _injunction_**

La desobediencia a un auto de _injunction_ es penable como desacato por el tribunal.

El tribunal puede dictar una orden de arresto, al quedar convencido por declaración jurada de la violación del _injunction_, contra la persona que sea culpable de dicha violación, y, a discreción del tribunal, puede dicha persona ser sentenciada a pagar una multa que no exceda de quinientos (500) dólares y a hacer inmediata restitución a la persona perjudicada, y a prestar mayor fianza para obedecer al _injunction_ o, en defecto de ello, podrá ser encarcelada por un tiempo que no exceda de seis meses.

encarcelamiento por un término que no exceda de seis (6) meses. Hemos interpretado que es a falta del cumplimiento de la penalidad pecuniaria que procede, de forma subsidiaria, la encarcelación del desacatador. U.P.R. v. Alejandro Rivera, 111 D.P.R. 682,684 (1981).

Como todo desacato, el incumplimiento a una orden de injunction puede ser castigado tanto como desacato civil como desacato criminal, ya que es el propósito del castigo y no el carácter del acto castigado, lo que determina si el procedimiento seguido es civil o criminal. En Pérez v. Espinosa, 75 D.P.R. 777, 781, (1954) expresamos:

> "En el desacato civil se impone en la sentencia una penalidad por término indefinido, efectiva hasta tanto el demandado cumpla con su obligación primaria, de pasar alimentos en un caso como el de autos. Como se ha indicado, el propósito esencial de tal clase de sentencia es el de beneficiar al otro litigante, y promover sus intereses privados, ya que el demandado tiene la llave de las puertas de la prisión en virtud del cumplimiento de su obligación principal y personal, y en esa forma se le da una oportunidad a la parte querellante para obtener el remedio o el resarcimiento que ella realmente interesa. La sentencia en un desacato civil no es punitiva, y la imposición de la pena no es su finalidad primordial. La pena por un término indefinido sirve solamente de medio para el logro de la finalidad esencial del cumplimiento de la orden original, en beneficio del otro litigante. De otro lado, la sentencia de desacato criminal es por un término fijo de encarcelación o por una multa o penalidad fija, a ser cumplido o pagada independientemente del cumplimiento o incumplimiento de la orden u obligación original. Su propósito básico es el de vindicar la autoridad y la dignidad del tribunal. Podría,

naturalmente, servir de estímulo para la obediencia de la orden original, a los fines de la evitación por el querellado de futuros procesos. Pero eso sería un propósito o consecuencia incidental. La esencia consiste en imponer un castigo fijo e incondicional al querellado, por haber ofendido al tribunal."

Esta distinción es de singular importancia por sus repercusiones tanto sustantivas como procesales. Cuando la conducta se va a castigar como desacato criminal, tanto bajo el artículo 687 del Código de Enjuiciamiento Civil, supra, como por el artículo 235 del Código Penal, *supra*, es necesario satisfacer el procedimiento estatuido en la regla 242 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 242. La misma establece:

**Procedimiento Sumario.** El desacato criminal podrá castigarse en forma sumaria siempre que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se cometió en presencia del tribunal. La orden condenando por desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal.

**Procedimiento Ordinario.** Salvo lo provisto en el inciso (a) de esta regla, en todo caso de desacato criminal se le dará al acusado previo aviso la oportunidad de ser oído. El aviso expondrá el sitio, hora y fecha de la vista, **concederá al acusado un tiempo razonable para preparar su defensa**, hará saber al acusado que se le imputa un desacato criminal y expondrá los hechos esenciales constitutivos del mismo. El acusado tendrá derecho a su libertad provisional bajo fianza de acuerdo con las disposiciones de estas reglas. Si el desacato se fundara en actos o conducta irrespetuosa hacia un juez, éste

> no podrá conocer de la causa excepto con el consentimiento del acusado. (Énfasis nuestro)

Ya hace mucho tiempo tuvimos oportunidad de interpretar la sección precedente. En _Pérez_ v. _Espinosa_, _supra_, a la pág. 782, dijimos:

> [P]ara que sea válida una sentencia de desacato criminal, el procedimiento seguido en cuanto al desacato debe ser de naturaleza criminal, y, en el inicio de ese procedimiento, debe haberse informado al querellado **en forma adecuada** que contra él ha de seguirse un procedimiento de naturaleza criminal que podría culminar en una sentencia de desacato criminal, por un término o penalidad fija, a los fines de que él pueda tener, desde el primer momento, el conocimiento de la existencia, y la oportunidad de invocar en su beneficio, ciertas defensas y reglas propias de un procedimiento criminal, tales como la presunción de inocencia, el privilegio de no incriminarse, y el postulado de que su culpabilidad debe probarse más allá de una duda razonable. (Citas omitidas; énfasis nuestro)

El Tribunal Supremo de los Estados Unidos ha reconocido estos mismos requisitos resolviendo que forman parte de las garantías mínimas del debido proceso de ley y de otras garantías constitucionales aplicables a una sentencia por desacato criminal. Veáse, _United Mine Workers_ v. _Bagwell_, 512 U.S. 821 (1994); _Hicks_ v. _Feiock_, 485 U.S. 624 (1988); _United States_ v. _United Mine Workers,_ 330 U.S. 258 (1947); Wright, Federal Practice and Procedure:

Criminal 2d, Sec. 701 *et seq.*, Vol. 3 (2da ed. 1982 y Sup. 1998).

En <u>United Mine Workers</u> v. <u>Bagwell</u>, *supra,* a la página 826, en referencia al desacato "indirecto", aquel que no ocurre en presencia del tribunal, como en el caso de marras, el Tribunal Supremo Federal reiteró:

> "Criminal contempt is a crime in the ordinary sense", Bloom v. Illinois, 391 U.S. 194, 201 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." Hicks v. Feiock, 485 U.S. 624,632 (1988). See In re Bradley, 318 U.S. 50 (1943) (double jeopardy); Cooke v. United States, 267 U.S. 517, 537 (1925)(rights to notice of charges, assistance of counsel, summary process, and to present a defense); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 444 (1911) (privilege against self-incrimination, right to proof beyond a reasonable doubt). For "serious" criminal contemps involving imprisonment of more than six months, these protections include the right to jury trial. Bloom, 391 U.S. at 199; see also Taylor v. Hayes, 418 U.S. 488,495 (1974). In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an apportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.

Como vemos, el procedimiento seguido para tramitar ambas modalidades del desacato –civil y criminal– implica diferencias en cuanto al tipo de notificación a que tiene derecho el demandado, al derecho a estar representado por abogado en la vista de desacato y a la concomitante concesión como parte de ese derecho, de un tiempo razonable para preparar su defensa, el derecho a no ser obligado a testificar durante la vista, al derecho a gozar de la presunción de inocencia y a que se pruebe su culpabilidad más allá de duda razonable, al tipo de castigo que puede ser impuesto,[7] al derecho de apelación, y a los trámites apelativos ulteriores.[8]

El Tribunal Supremo Federal, interpretando la Regla 42 de las Reglas Federales de Enjuiciamiento Criminal, equivalente a la Regla 242 de nuestra jurisdicción, hace una distinción entre el desacato directo, esto es, aquel cometido en la presencia del juez y el desacato indirecto, el cual es aquel que se comete fuera del ámbito físico del

---

[7] A modo de ejemplo, aunque en este caso aplicable a ambos procedimientos criminales, como ya vimos se da una diferencia fundamental procesal cuando se castiga criminalmente la desobediencia a un auto de *injunction* por el procedimiento de desacato especial dispuesto para esos fines, donde es posible aplicar la pena de restitución, pero ésta no podrá ser utilizada cuando se castiga la desobediencia a una orden o decreto del tribunal bajo el desacato criminal tipificado por el artículo 235 del Código Penal.

[8] Rivé Rivera, David, *Recursos Extraordinarios, supra,* a la

tribunal. Al igual que nuestra regla, en el primero la

regla autoriza a castigar sumariamente cuando el juez puede

certificar que vio u oyó la conducta constitutiva de

desacato. En el segundo son necesarias las garantías de

todo procedimiento criminal.[9]  Por su pertinencia con los

hechos ante nos, vale la pena reproducir en extenso las

palabras del Tribunal Supremo Federal:

> Still further procedural protections
> are afforded for contempts occurring
> out of court, where the
> considerations justifying expedited
> procedures do not pertain. Summary
> adjudication of indirect contempts is
> prohibited, e.g., Cooked v. United
> States, 267 U.S. 517 (1925), and
> criminal contempt sanctions are
> entitle to full criminal process.[10]
> (Citas omitidas)
>
> [C]ontempts involving out of court
> disobedience to complex injunctions
> often require elaborate and reliable
> factfinding. ... Such contempts do not
> obstruct the court's ability to
> adjudicate the proceedings before it,
> and the risk of erroneous deprivation
> for the lack of a neutral factfinder
> may be substantial. ...Under these
> circumstances, criminal procedural
> protections such as the right to
> counsel and proof beyond a reasonable
> doubt are both necessary and
> appropriate to protect the due process
> rights of parties and prevent the

---

pág. 89
[9]   Código Penal de Puerto Rico, Revisado y Comentado por
Dora Nevárez Muñiz, ed. 1995, pág. 375.
[10]   *United Mine Workers* v. *Bagwell, supra*, a la pag. 833

arbitrary exercise of judicial power.[11]
(Citas omitidas)

En resumen, la garantía constitucional que exige al estado no privar a persona alguna de su libertad o propiedad sin un debido proceso de ley, hace mandatorio en estos casos la observancia de todas las salvaguardas constitucionales aplicables a toda clase de imputación tipificada y castigada como un delito criminal para garantizar un juicio justo e imparcial. Es corolario de una adecuada representación legal el prepararse adecuadamente para defender al cliente. La Constitución y la Regla 242, supra, así lo exigen. Sin duda, "allí donde hay derecho constitucional a asistencia de abogado hay también derecho a que tal asistencia sea adecuada".[12] Coexiste con esta protección constitucional el también constitucional derecho al careo o confrontación con los testigos de cargo, para lo cual se hace indispensable la fase del descubrimiento de prueba.[13] Tan fundamental se considera este derecho a la adecuada representación legal que su violación, a falta de renuncia, conlleva la

---

[11]  *Id.*
[12]  Chiesa, Ernesto, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol.I, sec. 7.10 pág. 553, 1991
[13] Resumil, Elena, *Derecho Procesal Penal,* tomo 2, pág.67, 1993; véase además, <u>Pueblo</u> v. <u>Sánchez</u>, 109 D.P.R. 243 (1979)

revocación de la sentencia condenatoria. Véase <u>Pueblo</u> v. <u>Gordon</u>, 113 D.P.R. 106, 109 (1982).

A pesar de que el juez indicó en su orden de mostración de causa que se habría de llevar a cabo un procedimiento de desacato criminal, y su objetivo era vindicar la dignidad del Tribunal, negó a los recurrentes las garantías constitucionales estatuidas en las leyes y la jurisprudencia para procedimientos criminales, sin observar las diferencias entre ambos desacatos en cuanto al tipo de notificación, al derecho a una adecuada representación de abogado, al tipo de castigo a ser impuesto y que la culpabilidad de los demandados debió haber sido probada más allá de duda razonable. El tribunal había logrado ya su propósito de detener la huelga por medio de la orden de injunction permanente y había obtenido un compromiso de los huelguistas de retornar a sus trabajos. El Estado ya no estaba en peligro de un daño inminente. No habría de causar a éste perjuicio adicional el proveer a los "demandados" una oportunidad real y efectiva de preparar una defensa adecuada en un caso donde las consecuencias para éstos podrían ser la pérdida de libertad y considerables derechos patrimoniales. Ninguna razón de política pública obligaba afectar las garantías constitucionales de los demandados. No nos cabe duda de que la presión del momento, la

publicidad del procedimiento y otras circunstancias incidieron sobre el ánimo del Juez de Instancia en la conducción del proceso judicial. Poner tiempo de por medio, tanto para garantizar los derechos constitucionales de los demandados asegurando su derecho a una adecuada representación legal y a presentar defensas adicionales, como para ponderar y recapacitar sobre los hechos, hubiese sido el curso de acción adecuado. Abusó de su discreción el Tribunal de Instancia.

La conclusión a la que llegamos hoy hace innecesaria la discusión de los restantes señalamientos.

Por los fundamentos expuestos se dictará sentencia revocando la convicción de los recurridos por desacato y se ordena la devolución de este asunto al foro de instancia para la celebración de un nuevo juicio en forma compatible con lo aquí resuelto, incluyendo la adecuada notificación de los cargos que se les imputan a tales recurridos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico, Departamento
de Hacienda, et als

    Demandantes-Recurridos

       v.                         RE-94-265       Revisión
                                     Ref. AC-94-313

Asociación de Auditores,
Contadores y Especialistas del
Negociado de Contribución Sobre
Ingresos et als

    Demandados-Recurrentes

SENTENCIA

San Juan, Puerto Rico, a 11 de marzo de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia y se revoca la convicción de los recurridos por desacato y se ordena la devolución de este asunto al foro de instancia para la celebración de un nuevo juicio en forma compatible con lo aquí resuelto, incluyendo la adecuada notificación de los cargos que se les imputan a tales recurridos.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri concurre sólo en cuanto a revocar la condena por desacato y disiente en cuanto a devolver el caso para nuevo juicio.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo