Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| JORGE TORRE LEÓN<br>Apelado<br><br>*v.*<br><br>CARIBE PROFESSIONAL<br>INSURANCE AGENCY, INC.<br>Apelante | KLAN202500142 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2024CVI0361<br><br>Sobre: Injunction Estatutario, Art. 7.10 Ley General de Corporaciones |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Juez Ponente, Adames Soto

**<u>SENTENCIA</u>**

En San Juan, Puerto Rico, a 5 de mayo de 2025.

Comparece Caribe Professional Insurance Agency, Inc. (Caribe o parte apelante), solicitándonos la revocación de una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI), el 5 de febrero de 2025. Mediante esta, dicho foro emitió un *injunction* estatutario, al amparo del Artículo 7.10 de la Ley General de Corporaciones, 14 LPRA sec. 3650, autorizando al señor Jorge Torre León (señor Torre León o apelado), a examinar libros y cuentas de Caribe.

Contrario a lo decidido por el TPI, Caribe nos plantea que no procedía dictar sentencia sumaria en este caso pues el hecho medular a ser dilucidado, si el señor Torre León era accionista de dicha empresa, continúa en controversia.

No coincidimos, *Confirmamos.*

NÚMERO IDENTIFICADOR

SEN2025_____

## I. Resumen del tracto procesal

El 6 de noviembre de 2024 el señor Torre León presentó un *Injunction estatutario[1]* ante el TPI, al amparo del Art. 7.10 de la Ley General de Corporaciones, *supra*, dirigido contra Caribe. En este alegó que era accionista de dicha corporación, en un 33.3%. Añadió que Caribe no había emitido certificados de acciones a su nombre, pero que el hecho estaba reconocido mediante *Resolución Corporativa,* suscrita el 30 de mayo de 2023 por el presidente de la corporación. Junto al *Injunction estatutario* el señor Torre León incluyó los siguientes documentos para probar lo alegado: (1) la aludida Resolución Corporativa de 30 de mayo de 2023; (2) su planilla sobre contribución de ingresos; (3) petición jurada de información a Caribe y; (4) una carta del representante legal de Caribe en respuesta a la Petición Jurada de Información por parte de la representación legal de Torre León.

Al día siguiente el TPI emitió una *Orden de mostrar causa* dirigida a Caribe, y pautó vista para determinar la procedencia del interdicto estatutario, a celebrarse el 18 de noviembre de 2024.

Por su parte, el 13 de noviembre de 2024, Caribe presentó su *Oposición a la solicitud de interdicto estatutario.* En esta solicitó la desestimación de la *Demanda,* aseverando que el señor Torre León no poseía legitimación activa para instar la causa de acción, al no ser un accionista de Caribe. Con relación a esto último afirmó que el apelado nunca aceptó el reiterado ofrecimiento de Caribe para ser accionista, a pesar de requerírsele en múltiples ocasiones que se decidiera a favor de ello, o por ser contratista independiente, y fue informado previo a su salida que no era accionista. Adujo que la resolución corporativa firmada por el presidente de Caribe incluida en la *Demanda* se había emitido con el propósito de motivar al recurrido a que finalmente se decidiera aceptar ser accionista. Arguyó que el

---

[1] Apéndice del recurso de apelación, págs. 39-99.

señor Torre León había retirado unilateralmente, y en perjuicio de Caribe, el pago realizado para la adquisición de las acciones.

En apoyo de sus alegaciones, Caribe incluyó junto a su *Oposición a solicitud de interdicto estatutario,* los siguiente documentos: (1) tres cartas en respuesta a las peticiones de acceso a los libros corporativos de Caribe; (2) varios correos electrónicos respecto a las negociaciones entre las partes; (3) declaraciones juradas de: a) María Elena de la Cruz (CPA de Caribe), b) Marta Franca (Secretaria-Tesorera de Caribe) y, c) Porfirio Franca (Presidente de Caribe); y (4) una carta de ofrecimiento dirigida al señor Torre León sobre compensación y compra del 33% de las acciones corporativas.

A raíz de ello, el foro de instancia ordenó al señor Torre León que replicara, además, dejó en suspenso la vista señalada para el 18 de noviembre de 2024.

En cumplimiento, el 18 de noviembre de 2024, el señor Torre León sometió un escrito intitulado, *Réplica a "Oposición a Solicitud de Interdicto Estatutario al Amparo del Artículo 7.10 de la Ley General de Corporaciones" y Solicitud de Sentencia Sumaria a Favor de la Parte Demandante Jorge Torre León.* Primero, argumentó que la defensa de falta de jurisdicción por ausencia de legitimación activa esgrimida por Caribe era realmente un reclamo al amparo de la Regla 10.2 de Procedimiento Civil, 32 Ap. V, Regla 10.2, que debía denegarse porque no admitió como verdaderas las alegaciones contenidas en el *Injunction estatutario,* sino que incluyó documentos para impugnarlas. Entonces, solicitó que se dictara sentencia sumaria a su favor, pues entendía que no había controversia sobre el hecho material de que era accionista de Caribe, proveyendo prueba documental para sostener los hechos que enumeró como incontrovertidos.

Ante ello, el foro de instancia ordenó a Caribe que replicara.

Tras varios trámites procesales, Caribe presentó una *Dúplica a Réplica en Oposición a Petición de Interdicto Estatutario.* En esta afirmó que todos

los argumentos y documentos presentados por el señor Torres León para sostener que era accionista de Caribe habían sido rebatidos y desmentidos con declaraciones juradas y otra prueba documental. Por tanto, sostuvo que existía controversia sobre si el apelado era o no accionista, lo que incumplía el primer requisito para que prosperara el recurso extraordinario de interdicto estatutario presentado.

Esta vez el foro primario le ordenó al señor Torre León replicar a dicha moción de Caribe.

De conformidad, el señor Torre León presentó una *Moción en Cumplimiento de Orden*. Llevó a la atención del Tribunal que la Regla 36.3 de Procedimiento Civil, *infra*, establece que la oposición a una sentencia sumaria debía presentarse en un término de veinte días, que en este caso había vencido sin Caribe haberla presentado, quedando así sometido el asunto para la disposición del TPI. Esgrimió que, para efectos del *Injunction estatutario* presentado, el único asunto relevante a determinar era si el promovente de la acción era accionista de la corporación, y si el requerimiento de información respondía a un propósito válido, y ambos asuntos quedaban demostrados a través de la prueba documental que tenía el Tribunal ante su consideración.

Es así como, el 5 de febrero de 2025, el foro de instancia emitió la *Sentencia* cuya revocación nos solicita Caribe. En esta, detalló cuarenta y cuatro determinaciones de hechos que identificó como incontrovertidos, seguido de exponer el Derecho que juzgó pertinente. Realizado tal ejercicio, el TPI concluyó que la documentación presentada establecía que el señor Torre León era accionista de Caribe, y la petición de inspección de los libros realizada tenía un propósito válido. En consecuencia, ordenó a Caribe que le brindara acceso al señor Torre León a los libros y cuentas de la corporación que se relacionaran específicamente con el propósito válido de conocer el valor de las acciones de la corporación; obtener información sobre las

transacciones corporativas; y verificar los gastos personales de individuos, ya sean empleados, oficiales o accionistas de la corporación. Limitó lo anterior al periodo de los últimos cinco (5) años.

En desacuerdo, Caribe presentó una solicitud de reconsideración ante el tribunal *a quo*, arguyendo que había refutado abundantemente la alegación de que el señor Torre León era un accionista, con la documentación que ya tenía el Tribunal. Añadió que, al ser dicha controversia una medular, que no podía ser adjudicada mediante una sentencia sumaria, debía celebrarse vista para dirimirla.

El TPI declaró *No Ha Lugar* la petición de reconsideración.

Por tanto, el 21 de febrero de 2025, Caribe presentó el recurso de apelación ante nuestra atención, señalando el siguiente error:

> Erró el Tribunal de Primera Instancia (TPI) al resolver mediante el mecanismo procesal de una sentencia sumaria el presente caso, cuya controversia es estrictamente de hechos, privándole a CARIBE tener su día en corte, en violación a su derecho constitucional al debido procedimiento de ley.

En respuesta, el señor Torre León presentó su *Alegato de la parte apelada.*

A su vez, el 28 de marzo de 2025, la parte apelada también solicitó ante el TPI una vista de desacato contra Caribe.

El mismo día de dicha solicitud, el foro primario le concedió a Caribe un término de 24 horas para mostrar causa por la cual no debía encontrarlo incurso en desacato.

Tras varios incidentes procesales, el 1 de enero de 2025, Caribe presentó una *Moción Urgente en Auxilio de Jurisdicción* ante este Tribunal de Apelaciones, solicitándonos la paralización de los procesos en el TPI, hasta que decidiéramos la controversia ante nuestra consideración.

Al tenor de la solicitud de auxilio de jurisdicción, ordenamos la paralización de los procedimientos ante el TPI.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II. Exposición de derecho

### A. *El Injunction* estatutario

El recurso de *injunction* o interdicto es un remedio extraordinario discrecional que procura la expedición de un mandamiento judicial que le exige a una persona a actuar o le prohíbe realizar determinada conducta que infringe o perjudica derechos de otra. Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 3521. Dicho de otra manera, se trata de un remedio que busca prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en casos en los que no hay otro remedio adecuado en ley. *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999).

La regulación del *injunction* descansa principalmente en la Regla 57 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y en los Artículos 675 a 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3533. Toda vez que se trata de un recurso extraordinario, los tribunales pueden expedir un *injunction* únicamente en aquellos casos en los que no hay otro remedio adecuado en el curso ordinario de la ley. *ELA v. Asoc. de Auditores*, supra.

Ahora bien, bajo ciertas circunstancias y, con el fin de prevenir violaciones a sus disposiciones y a la política pública que implantan, algunas leyes especiales autorizan también la expedición de un *injunction*. Se trata de un recurso especial, conocido como *injunction* estatutario, distinto al interdicto clásico u ordinario. J. Cuevas Segarra, Tratado de Derecho Procesal Civil *2da. ed., Estados Unidos, Pubs. J.T.S., 2011, T. V*, pág. 1672. Este tipo de *injunction* procura que se obtenga una orden para paralizar la ejecución de determinada conducta contraria a los términos de ley, ya sea de forma inmediata, provisional o permanente. *Íd.* Además, el *injunction*

estatutario tiene su origen en un mandato legislativo expreso, por lo que su concesión "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado". *Next Step Medical v. Bromedicom et al,* 190 DPR 474, 497 (2014).

Al presentarse una solicitud de *injunction* estatutario, no se requiere alegación, ni prueba de daño irreparable; es decir, basta con que el demandado haya violado las disposiciones de la ley. *ARPe v. Rivera,* 159 DPR 429, 444 (2003). Así, la parte promovente de un *injunction* estatutario, debe acreditar ante el foro competente: (i) que existe una ley o reglamento que regula el uso o actividad en cuestión y, (ii) que los demandados están haciendo uso o realizando una actividad en violación a la ley o reglamento. J. Cuevas Segarra, *supra.*, a las págs. 1672-73.

### B. El *injunction* estatutario bajo el Artículo 7.10 de la Ley de Corporaciones

El Art. 7.10 de la Ley Núm. 164-2009, Ley General de Corporaciones, 14 LPRA sec. 3650*, hace viable el derecho **de todo accionista** de una corporación a solicitar la inspección del registro de acciones, la relación de accionistas y los demás libros de la corporación.* (Énfasis provisto). *Domenech v. Integration Corp.,* 187 DPR 596, 609-610 (2013).

Sin embargo, si la corporación o los encargados de los libros impiden la inspección, el inciso (c) del citado Art. 7.10 permite **al accionista** recurrir al TPI, como foro con jurisdicción exclusiva, para solicitar una orden en la que obligue a la corporación a permitir tal inspección. (Énfasis provisto). 14 LPRA sec. 3650(c). En el mismo inciso (c) el estatuto le reconoce facultad al TPI parar ordenar *sumariamente* a la corporación que permita al accionista examinar los libros. Es decir, el Art. 7.10 de nuestra Ley General de Corporaciones pretende hacer viable la inspección de los libros por un accionista *mediante un procedimiento expedito. Domenech v. Integration Corp.,* supra, pág. 618.

Como ha quedado visto, las secciones del Art. 7.10 citadas requieren que quien solicite la inspección sea un accionista. *Domenech v. Integration Corp.,* supra, pág. 618. Por su parte, el inciso (a)(1), el Art. 7.10 define *accionista* como *aquel inscrito en el registro de acciones de la corporación, beneficiario de un fideicomiso de votos o miembro de una corporación sin acciones de capital.[2]*

No obstante, cuando los libros de una corporación no reconocen la titularidad de un accionista, resulta admisible la presentación de prueba extrínseca para probar dicha titularidad. *Domenech v. Integration Corp.,* supra. Es decir, el Art. 7.10(b) citado reconoce la posibilidad de que haya un accionista distinto al que está inscrito. Para tales casos, nuestra ley permite la presentación de prueba documental que acredite el derecho de propiedad sobre la acción que se reclame, juramentada como una copia veraz y correcta de lo que aparenta probar. *Domenech v. Integration Corp.,* supra, pág. 619.

Cuando el caso se circunscribe al derecho de inspección de libros de la corporación, basta con la determinación de que quien reclama ser accionista realmente lo es y que tenga un propósito válido. Id., pág. 620.

**C. Sentencia Sumaria**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, regula la sentencia sumaria. El Tribunal Supremo ha dicho que el propósito de este mecanismo procesal es resolver de manera rápida los litigios civiles **en los que no exista una controversia de hechos real o sustancial sobre algún hecho material que requiera la celebración de un juicio en su fondo**. (Énfasis provisto). *Zambrana García v. ELA,* 204 DPR 328, 341 (2020); *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que

---

[2] 14 LPRA sec. 3650(a)(1).

deniega su aplicación, este foro intermedio se encuentra en la misma posición que el foro primario para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 115. Los criterios que debemos seguir al atender la revisión de una sentencia sumaria dictada por el Foro de instancia han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.*, págs. 118-119; *Roldán Flores v. M. Cuebas et al.*, a la pág. 679. A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;
2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;
3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;
4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, a la pág. 679.

Sin embargo, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 118. El primer punto se enfoca en el principio de que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. *Íd.,* pág. 115, citando a *Vera v. Dr. Bravo*, 161 DPR 308, 334–335 (2004). Por su parte, el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlas. *Íd.*

### III. Aplicación del derecho a los hechos

Según ha quedado visto, la controversia medular que debemos dirimir es si, a través de los documentos que presentó el señor Torre León en su moción de sentencia sumaria quedó establecido como un hecho incontrovertido que fuera accionista de Caribe. A su vez, debemos examinar los documentos que aportó Caribe, para determinar si logró controvertir tal hecho material alegado.

El anterior ejercicio debe estar enmarcado dentro del proceso sumario que establece el Art. 7.10 de la Ley General de Corporaciones, *supra*, cuando un accionista requiere inspeccionar los libros de la corporación. Es decir, no estamos ante un proceso ordinario, sino sumario que, aunque, como ocurrió en *Domenech v. Integration Corp.,* supra, se ha visto retrasado al dilucidarse un elemento esencial de la causa de acción, si el promovente de la petición de inspección de libros corporativos es verdaderamente un accionista, debe procurar mantener su propósito. En este contexto, además, juzgamos que, tal como lo hizo el TPI, estamos en posición de examinar la documentación presentada ante el foro primario por ambas partes, aunque Caribe no hubiese presentado propiamente un escrito en oposición a sentencia sumaria que se ajustara a los requerimientos de la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b), pues, en efecto, sí presentó la prueba documental que estimó pertinente para controvertir los hechos alegados como incontrovertidos por el apelado.

Según lo indicamos en el recuento procesal, al sopesar la prueba documental que obrara en el expediente, el foro apelado enumeró cuarenta y cuatro hechos como incontrovertidos, que le sirvieron de base para concluir que el señor Torre León era accionista de Caribe. Adelantamos que estamos contestes con cada una de dichas determinaciones de hechos enumeradas, pues la prueba documental ante nosotros las sostiene.

No obstante, a ello opone Caribe en su recurso de apelación: haber presentado tres declaraciones juradas que impugnaban que el apelado fuera accionista; la ausencia de una firma por el apelado en el *Stock purchase agreement*, según fue recogido en el hecho número veinte de la referida Sentencia; que en varias ocasiones el señor Torre León fue informado por la CPA De la Cruz, de que no era accionista; este nunca suscribió un contrato con Caribe para la compra de las presuntas acciones; la resolución corporativa presentada para establecer que era accionista no era un contrato.[3]

Sin pretender reproducir cada una de las determinaciones de hechos alcanzadas por el foro apelado, con las que estamos de acuerdo, juzgamos de valor aludir a algunas de estas, para ilustrar nuestra determinación.

El 18 de enero de 2022 a las 4:34 p.m. el señor Porfirio Franca envió un correo electrónico dirigido a la Sra. María Elena de la Cruz, con copia al señor Torre León y la señora Marta Franca,[4] del cual surge un resumen de acuerdos alcanzados con el apelado, entre los que se menciona que:

1- Se quedará con el 33%.- todos sus ingresos se depositarán en Caribe Professional cuenta de Caribe Federal. PF 33%- MF- 33%-JT 33% y pagaremos todos sus gastos incluyendo a Priscila que Jorge debe dar lo que él le paga por First Federal
2- Daremos dividendos a fin de año.
3- Sacaremos una tarjeta de crédito corporativa para cada uno.
4- [...]
5- Se hizo el ck dividendos Jorge, más, se hará el de comisiones por 480. [...]

(Determinación de hecho número 9 de la *Sentencia*).

Luego, a las 4:47 p.m. del mismo día, el señor Torre León respondió el referido correo electrónico al preguntar si los dividendos también le podían "ser pagados a través de la 480".[5] (Determinación de hecho número 10 de la *Sentencia*). A lo cual la CPA María De la Cruz contestó el 19 de enero de 2022 a las 4:52 p.m. diciendo que "los dividendos no son dividendos pues no eres

---

[4] Apéndice del recurso de apelación, págs. 114-115.
[5] Apéndice del recurso de apelación, pág. 114.

dueño. Por tanto, son una compensación adicional". (Determinación de hecho número 11 de la *Sentencia*).[6]

Sin embargo, al próximo día, el 20 de enero de 2022, a las 9:53 am, el señor Porfirio Franca envió un correo electrónico al señor Torres León y la CPA De la Cruz, indicando, *plis lee mi email él tendrá el 33% de las acciones Marta el 34% y yo el 33%.* (Determinación de hechos número 13 de la Sentencia).

Es decir, a pesar de la comunicación de la CPA De la Cruz hacia el apelado, en el sentido de que no era accionista, la posterior comunicación del propio presidente de la Caribe, señor Porfirio Franca, de 20 de enero de 2022, lo que transmite es su insistencia en la concepción del señor Torre León como accionista.

Dicho lo anterior, reconocemos que de la prueba documental ante nuestra atención surge un documento intitulado como *Stock purchase agreement,* dirigido al apelado, que contenía los siguientes acuerdos: Ownership to be acquired 33%, purchase price $691,000… if you agree with this offer, please sign, and return the document to my attention", más no aparece que fuera suscrito por el señor Torre León.[7]

Con todo, en una fecha posterior, también contamos con el documento titulado *Resolución Corporativa,* con fecha del 30 de mayo de 2023, firmado por el señor Porfirio Franca.[8] (Determinación de hecho número 22 de la *Sentencia*). Esta prueba documental constituye base esencial del reclamo del señor León Torre como accionista de Caribe, por cuanto allí se dispuso lo que sigue: "la Junta de Directores de LA CORPORACIÓN declara un dividendo a sus accionistas en récord al 31 de marzo de 2023 equivalente a $105,000.00 relacionado a las ganancias de la empresa al 31 de diciembre

---

[6] Apéndice del recurso de apelación, pág. 113.
[7] Apéndice del recurso de apelación, págs. 124-125.
[8] Apéndice del recurso de apelación, pág. 61.

de 2023, pagadero en o antes del 30 de junio de 2023".[9] Continúa estableciendo el documento que, dichos dividendos serán pagaderos de la siguiente forma:

> • Porfirio Franca $35,000 equivalente al 33.3% pagadero en efectivo
> • Marta Franca $35,000 USD equivalentes al 33.3% pagadero como a una cuenta por cobrar de accionista
> • ***Jorge Torre $35,000 equivalente al 33.3% pagadero en efectivo***
> Que dicho dividendo será pagadero de los fondos y capital disponible en la corporación.
>
> **EN TESTIMONIO DE LO CUAL**, firmó y estampó el sello de esta Corporación en San Juan, Puerto Rico, hoy día 30 de mayo de 2023.
> Caribe Professional Insurance, Inc.
> [...]

(Énfasis provisto).[10]

A juicio nuestro, la demás documentación presentada por Caribe para tratar de controvertir el hecho de que Torre León era accionista de dicha corporación, fue resultado de un esfuerzo *a posteriori* de dicha corporación para evitar descubrir la información solicitada por el segundo, es decir, como medio para negar la inspección de los libros. Nótese que, a pesar de la afirmación de Caribe en términos de que Torre León *nunca advino a ser accionista porque optó por su propia voluntad, interés, beneficio no serlo, prefiriendo y escogiendo al así hacerlo continuar recibiendo remuneración por concepto de comisiones como contratista independiente[11]*, el expediente está huérfano de documentación provista por la corporación que sirva para sostener tal aseveración. En la misma tónica, no obstante Caribe haber tenido oportunidad de oponer alguna documentación que sirviera para controvertir la *Resolución Corporativa* de 30 de mayo de 2023, dependió para ello de sendas declaraciones juradas, suscritas luego de trabada la controversia sobre la inspección de los libros, basadas en opiniones concluyentes que no resultan en la impugnación del contenido de la referida *Resolución*. Además, insistimos, no logramos dar con documentación que

---

[9] *Íd.*
[10] *Íd.*
[11] Apéndice del recurso de apelación, pág. 155.

constate la presunta negativa del apelado a ser accionista, post Resolución corporativa de 20 de mayo de 2023. Ante ello, mostró buen juicio el foro apelado al decidir que no se justificaba extender más una controversia que, por la prueba documental presentada, más bien lo que muestra es un intento por Caribe de retrasar la inspección de libros requeridas, antes que impugnar verazmente a Torre León como su accionista.

**IV.  Parte dispositiva**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, determinamos *confirmar* la *Sentencia* apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones