Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| IMPERIO FITNESS CLUB CORPORATION<br><br>PETICIONARIOS<br><br>V.<br><br>SALVATION ENTERPRISE, ET. AL.<br><br>RECURRIDOS | KLCE202301031 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Civil Núm.: AI2023CV00226<br><br>Sobre:<br><br>Entredicho Provisional, Preliminar y Permanente, Rescisión de Contrato y Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard, y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 26 de octubre de 2023.

Imperio Fitness Club Corporation (en adelante Imperio o peticionario) comparece ante este Tribunal mediante un recurso de *Certiorari.* Solicita la revocación de una sentencia del Tribunal de Primera Instancia, Sala de Aibonito (en adelante TPI), emitida el 18 de agosto de 2023 y notificada el 21 de agosto de 2023.[1] El referido dictamen dejó sin efecto un *entredicho provisional* y denegó un *injunction preliminar* solicitado.

Examinado el recurso ante nuestra consideración, denegamos su expedición y ordenamos que el caso continúe en un proceso ordinario de incumplimiento de contrato.

**I.**

Imperio es una corporación organizada bajo las leyes de Puerto Rico, la cual opera un gimnasio. Su representante, presidenta, secretaria y tesorera es la señora Denisse Rivera Rodríguez (en adelante la señora Rivera Rodríguez). Salvation Enterprise (en adelante Salvation o el

---

[1] Apéndice del peticionario, pág. 10.

recurrido) es una empresa administrada por el señor Luis Aníbal De Jesús Sánchez (en adelante De Jesús Sánchez) dedicada a la operación de gimnasios bajo la marca ENC Boot Camp y ENC Gym´s.

El 6 de abril de 2021, Imperio y Salvation a través de sus representantes suscribieron un *Contrato de administración de gimnasio y compraventa de equipo.*[2] En lo concerniente pactaron las siguientes cláusulas contractuales:

**UNA:** Don Luis Aníbal De Jesús Sánchez, en representación de Enc Boot Camp asumirá la administración del gimnasio comenzando el 1ro. de abril de 2021.

**DOS:** A partir del 1ro. de abril de 2021, Enc Boot Camp asumirá el costo mensual de todas las utilidades.

**TRES:** Se establece que tanto Enc Boot Camp como Imperio Fitness Club tendrán acceso total a la contabilidad del negocio.

**CUATRO:** Las partes acordaron la venta del equipo del gimnasio, el cual está ampliamente detallado en un documento que se hace formar parte del presente contrato, por la suma de SETENTA Y DOS MIL DÓLATRES ($72,000.00), los cuales serán pagados en un término de TRES (3) años a contar desde el 1ro. de abril de 2021 y hasta el 30 de marzo de 2024.

**CINCO:** Enc Boot Camp pagará a Imperio Fitness Club, después de cubrir los gastos operaciones del negocio, un 30% o un mínimo de QUINIENTOS DÓLARES ($500.00) todos los meses y hasta su saldo total, para el pago del precio de venta establecido, comenzando el 1ro. de agosto de 2021.

**SEIS**: Enc Boot Camp entregará a Imperio Fitness Club la suma no reembolsable de DOS MIL QUINIENTOS DÓLARES ($2,500.00) al momento de recibir las llaves del gimnasio.

**SIETE:** De Enc Boot Camp no cumplir con los acuerdos aquí establecidos, Imperio Fitness Club estará en su derecho de retomar la administración del negocio, sin devolución del dinero recibido.[3]

El 24 de mayo de 2023, Imperio presentó una *Demanda Jurada* contra Salvation en la cual solicitó la rescisión del referido contrato y la indemnización de daños y perjuicios.[4] Alegó que el recurrido incurrió en incumplimiento contractual, pues no emitió los pagos correspondientes a la venta del equipo.[5] También planteó posible fraude y malversación de

---

[2] Apéndice del peticionario, pág. 11.
[3] Apéndice de peticionario, págs. 11-12.
[4] Apéndice del peticionario, pág. 22.
[5] Apéndice del peticionario, pág. 26.

fondos por parte del señor De Jesús Sánchez en la administración de los negocios. [6] En vista de ello, peticionó un entredicho provisional, un *injunction* preliminar y un *injunction* a los fines de (1) solicitar la entrega de la llave del gimnasio, (2) prohibir las facultades administrativas del señor De Jesús Sánchez; (3) ordenar que no realice transacciones ni intervenga con la cuenta de Imperio en la Cooperativa Rodríguez Hidalgo, y (4) requerirle la entrega de los recibos de las transacciones ascendentes a $44,355.68 o la devolución del dinero.[7]

El 1 de junio de 2023, la peticionaria nuevamente presentó *Moción de injunction provisional y preliminar.*[8] A raíz de dicha solicitud, el TPI emitió una *Orden* disponiendo que el señor De Jesús Sánchez no efectuara retiros y transacciones en la cuenta bancaria de Imperio.[9] A su vez, impuso a la parte peticionaria una fianza de $10,000.00 para responder por los daños y costas en caso de que el entredicho provisional expedido resultare indebido.[10]

El 26 de junio de 2023, Salvation presentó *Contestación a demanda jurada, reconvención y demanda contra tercero*.[11] En esencia, adujo que la causa de acción de Imperio no presentaba hechos que justificasen la concesión de un remedio.[12] Además, argumentó que la señora Rivera Rodríguez se ha negado a aceptar los pagos de Salvation y ha incurrido en abuso de derecho y mala fe.[13]

Tras escuchar los testimonios de las partes y examinar la prueba documental, el TPI declaró *no ha lugar* a la petición de *injunction* preliminar y dejó sin efecto el entredicho provisional.[14] En lo pertinente, formuló las siguientes determinaciones de hechos:

> **12.** Por virtud del Contrato, Salvation ha estado administrando el Gimnasio desde abril de 2021 hasta el presente y, desde entonces, opera dicho negocio bajo la marca o nombre comercial en ENC Boot Camp y Enc Gym´s.

---

[6] Apéndice del peticionario, pág. 26.
[7] Apéndice del peticionario, pág. 28.
[8] Apéndice del peticionario, pág. 39.
[9] Apéndice del peticionario, pág. 50.
[10] Apéndice del peticionario, pág. 50.
[11] Apéndice del peticionario, pág. 51.
[12] Apéndice del peticionario, pág. 56.
[13] Apéndice del peticionario, pág. 56.
[14] Apéndice del peticionario, pág. 9.

**13. Salvation ha incumplido la cláusula CINCO del Contrato.** (Énfasis nuestro).

**14.** Salvation emitió dos pagos a favor de Rivera, correspondientes al 15 de marzo de 2023 por la cantidad de $500 y otro por la cantidad de $4,5000 el 3 de mayo de 2023 que no fueron cambiados por Rivera.

**15.** Rivera y De Jesús sostuvieron una relación sentimental, que se extendió desde junio de 2021 hasta marzo de 2023.

**16.** Durante la vigencia de la relación, Salvation reportó y puso a disposición de Imperio información sobre las ventas y gastos del Gimnasio.

**17. En ningún momento entre junio 2021 a marzo de 2023, Imperio comunicó a De Jesús queja alguna respecto al manejo o la administración del Gimnasio bajo Salvation, ni sobre incumplimiento de Contrato.** (Énfasis nuestro).

**18.** Durante el transcurso de dicha relación, De Jesús y Rivera sufragaron gastos personales con fondos habidos en la cuenta incluyendo, pero sin limitarse a: cenas, salidas y compras.

**19**. Desde abril de 2021, Salvation ha realizado y continúa realizando inversiones económicas para el mejoramiento del Gimnasio y su posicionamiento en el mercado; incluyendo mercadeo y redes sociales, creando cuenta de Instagram y otra de Facebook bajo el nombre de ENC Gym's.

**20.** Cerca del mes de enero de 2022, según recomendó en ese momento la entonces contable de Imperio, Rivera y De Jesús abrieron una cuenta en la Cooperativa Rodríguez Hidalgo a nombre de Imperio (la "Cuenta").

**21.** La certificación de resolución de cuenta comercial para entidades y organizaciones utilizadas para abrir la Cuenta en la Coop. Rodríguez Hidalgo suscrita por Rivera y De Jesús, surge que Rivera posee un 70% de titularidad y De Jesús un 30% de titularidad de Imperio.

**22.** Los estados de cuenta de Imperio en la Coop. Rodríguez Hidalgo de enero, febrero, marzo, abril, mayo, junio, julio, agosto, septiembre, octubre, noviembre, diciembre de 2022, y enero, febrero, marzo, abril, mayo de 2023 muestran los gastos y retiros efectuados solamente por De Jesús.

[…]

**28.** El perito contable de Imperio, tras revisar los estados de la Cuenta correspondientes al año 2022, concluyó que hubo gastos ascendentes a la suma total de cuarenta y cuatro mil trescientos cincuenta y cinco dólares con sesenta y ocho centavos ($44,335.68) sin clasificar o *unclassified*. Explicó, además, que el término *unclassified* significaba que no tenía la evidencia necesaria para poder clasificarla como un gasto de negocio.

**29.** El perito CPA de la Parte Demandada, tras revisar información provista por De Jesús sobre los desembolsos realizados desde la Cuenta durante el año 2022, clasificó como gastos de negocios desembolsos de ATH Móvil ascendente a la suma total de treinta y dos mil trescientos nueve dólares con catorce centavos ($32,309.14).

**30.** Los gastos efectuados por De Jesús, ya sean $44,355.68 o $32,309.14 no fueron evidenciados.

[…]

**32. Ambos peritos concluyeron que no se puede concluir que la Parte Demandada haya incurrido en fraude por tener unos gastos como *unclassified.*** (Énfasis nuestro).

**33. Imperio no logró demostrar que la parte demanda incurriese en fraude o malversación de fondos en la administración del negocio bajo Salvation.** (Énfasis nuestro).

**34. Rivera como presidente, tesorera o secretaria de Imperio nunca solicitó estados de cuenta, ejerció actos de administración o supervisó las tareas del administrador para evitar las alegaciones de fraude o malversación de fondos en la administración del negocio bajo Salvation.** (Énfasis nuestro).

[…]

37. Imperio, Rivera, Salvation o De Jesús, al día de hoy, no han recibido notificación alguna de parte de cualquier organismo público, en particular, el Dpto. de Hacienda, sobre cualquier investigación o proceso que se esté llevando en contra de Imperio.[15]

Por lo anterior, el foro primario dictaminó que el asunto en torno al incumplimiento de contrato debe ventilarse en un proceso ordinario mediante el descubrimiento de prueba correspondiente.[16] Resolvió, además, que el contrato continúa vigente hasta el 30 de marzo de 2024.[17]

En desacuerdo con la determinación, Imperio acudió ante nos mediante una petición de *Certiorari*. En el aludido recurso señaló que el Tribunal de Primera Instancia incurrió en los siguientes errores:

Cometió error claro y manifiesto el Tribunal de Primera Instancia, al dejar sin efecto la orden de entredicho provisional en el cual se ordenó al peticionado no intervenir en la cuenta de Imperio Fitness y no conceder el entredicho preliminar y permanente, ordenando al peticionado entregar la llave del negocio del gimnasio y devolver los dineros utilizados para sus gastos personales ascendentes a $44, 355, 68 y entregar las tarjetas de la cuenta de Imperio Fitness Club. Esto en las determinaciones de hechos probados según

---

[15] Apéndice del peticionario, pág. 2-6.
[16] Apéndice del peticionario, pág. 9.
[17] Apéndice del peticionario, pág. 9.

surge de la sentencia recurrida (Exhibit 1 Página 1-10 Apéndice del recurso) el Tribunal de Primera Instancia establece que la parte peticionaria utilizó la cuenta del negocio como una personal para cubrir los gastos.

Cometió error claro y manifiesto el Tribunal de Primera Instancia por obviar las alegaciones de fraude y malversación de fondos al no hacer referencia a hechos o evidencia alguna que ejemplificara la intención de defraudar de la parte peticionada y concluir que el hecho de no poder clasificar unos gastos ascendentes a $44,355.68 no equivale a malversación o fraude y considerar los estado de cuentas estipulados por las partes y así admitidos en evidencia donde surge una serie de retiros sin más presupondría que el Tribunal de Primera Instancia deba especular sobre que significa cada uno de ellos sin prueba que los sostenga.

Cometió error claro y manifiesto el Tribunal de Primera Instancia al concluir que la fecha de vencimiento del pago o la forma de pago del balance de la compra del equipo. El Tribunal de Primera Instancia establece en las determinaciones de hechos en sus conclusiones que el peticionario incumplió con la cláusula número 5 del contrato por lo que su incumplimiento permite que Imperio Fitness Club rescinda el contrato y tome nuevamente la administración del negocio sin devolución alguna de dinero.

Cometió error claro y manifiesto el Tribunal de Primera Instancia al concluir que devolver la administración a Imperio Fitness Club en lo que se dilucida el caso en el pleito ordinario puede ocasionar que el peticionado se vea obligado a cerrar el negocio y cancelar todas las membresías lo que menoscabaría los intereses de Imperio. La parte peticionada solo fue contratada para administrar el negocio y el gimnasio y como administrador no tiene facultad de tomar decisiones dirigidas a cerrar el negocio y cancelar las membresías pues de así hacerlo estaría actuando de mala fe. Imperio Fitness Club es el único que como dueño puede tomar esa decisión. El Tribunal de Primera Instancia con su determinación y la sentencia ha convertido a la parte peticionada en dueño del negocio sin haberlo comprado y mucho menos sin haberlo pagado nada por el privando a la parte peticionaria de su derecho a disfrutar de su propiedad y a que esta pueda tomar la decisión de nombrar un administrador de su entera confianza.

Cometió error claro y manifiesto el Tribunal de Primera Instancia al concluir que la parte peticionada tiene el 30% de las acciones cuando el señor Luis Aníbal De Jesús en el contrainterrogatorio reconoció que no compró acciones de la corporación y tampoco le fueron donadas, donde surge ese alegado 30% es en un documento de la Cooperativa Rodríguez Hidalgo para uso interno de la cooperativa. No se presentó evidencia de contrato de compraventa de las acciones o de donación de las mismas.

Por su parte, Salvation presentó *Oposición a la expedición del auto de certiorari*. Argumentó que existen otros remedios que Imperio puede

solicitar.[18] Advirtió que otorgar un remedio interdictal ocasionaría un caos en la administración del gimnasio, toda vez que no habría una transacción ordenada en la remoción de su equipo y decoraciones alusivas a su marca.[19] Según el recurrido, lo anterior produciría pérdidas en el *goodwill* de su empresa y un potencial uso ilegal de su propiedad, así como un cierre temporero del negocio y confusión entre los clientes.[20]

## II.

### A. Certiorari

Las resoluciones u órdenes dictadas por los tribunales de instancia son revisables ante este Tribunal de Apelaciones, mediante el recurso de *certiorari*. *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, Ley Núm. 201-2003, 4 LPRA sec. 24y(b). El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Rivera Gómez v. Arcos Dorados Puerto Rico,* 2023 TSPR 65, 212 DPR ____; *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd.*

Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA V, R. 52.1, delimita las instancias en las cuales el foro apelativo puede ejercer sus facultades revisoras mediante el recurso de *certiorari*. La regla aludida dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de

---

[18] *Oposición a la expedición del auto de certiorari*, pág. 17.
[19] *Oposición a la expedición del auto de certiorari*, pág. 20.
[20] *Oposición a la expedición del auto de certiorari*, pág. 20.

decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. (Énfasis nuestro).

De acuerdo con la Regla 52.1 de Procedimiento Civil, *supra*, al denegar la expedición de un recurso de *certiorari* el Tribunal de Apelaciones no tiene que fundamentar su decisión. Ahora bien, si el foro intermedio determina que el recurso ante su consideración exhibe alguna de las circunstancias precitadas, entonces debe evaluar la petición de *certiorari* a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.

A tales efectos, el referido cuerpo reglamentario establece que el Tribunal de Apelaciones considerará los siguientes criterios para expedir un *certiorari*:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R.40.

En este ejercicio, el Tribunal de Apelaciones solo intervendrá con las determinaciones discrecionales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad, en un craso abuso de discreción, o aplicación errónea de la ley. *Citibank v. ACBI*, 200 DPR 724, 736 (2018); *García v. Asociación*, 165 DPR 311, 322 (2005).

**B.** *Injunction*

El *injunction* es un recurso extraordinario **"**dirigido a prohibir o a ordenar la ejecución de determinado acto, con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en casos en que no hay otro remedio adecuado en ley"**.** *ELA v. Asoc. de Auditores*, 147 DPR 669, 679 (1999). Solo procede su expedición "cuando el remedio existente en el curso ordinario de la ley no proteja adecuadamente los derechos sustantivos del peticionario de una manera rápida y eficaz". *Com. Pro. Perm. Bda. Morales v. Alcalde*, 158 DPR 195, 204 (2002); *Cruz v. Ortiz*, 74 DPR 321, 329 (1953).

La Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V., R. 52.3, establece los criterios que tribunal debe considerar para expedir un entredicho provisional o *injunction* preliminar:

(a) la naturaleza del daño a que está expuesto la parte peticionaria;

**(b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;** (Énfasis nuestro)

(c) la probabilidad de que la parte promovente prevalezca;

(d) la probabilidad de que la causa se torne en académica;

(e) el impacto sobre el interés público del remedio que se solicita, y

(f) la diligencia y la buena fe con que ha obrado la parte peticionaria.

Por su naturaleza extraordinaria, el *injunction* es de carácter discrecional. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 426 (2008); *Pérez Vda. de Muniz v. Criado Amunategui*, 151 DPR 355, 372 (2000). En ese sentido, "mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable, por lo que no procederá conceder el injunction". *Íd.*, pág. 427.

**III.**

En el presente caso Imperio solicita la revocación de la sentencia recurrida que dejó sin efecto un entredicho provisional y denegó la expedición del *injunction* preliminar. Sostiene que existe un daño

irreparable y permanente, que amerita la concesión de los remedios solicitados.[21] Según el peticionario, procede la expedición del entredicho provisional y el *injunction* preliminar para ordenarle al señor De Jesús Sánchez: (1) la entrega de las llaves del negocio, (2) la restitución del dinero de los gastos personales, y (3) la devolución del dinero recibido a la cuenta de Salvation.[22] Plantea, además, que si el pleito continúa por la vía ordinaria, éste se tornaría académico.[23]

La Regla 52.1 de Procedimiento Civil, 32 LPRA V, R. 52.1, nos concede la facultad para revistar interlocutoriamente la sentencia recurrida por ser una determinación bajo la Regla 57 de Procedimiento Civil, 32 LPRA V, R. 57. No obstante, tras analizar sosegadamente el expediente ante nuestra consideración, no identificamos fundamentos jurídicos que nos motiven a expedir el auto de certiorari de conformidad a la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. De igual modo, no encontramos los elementos requeridos para determinar que el foro primario actuó de forma arbitraria, caprichosa, o incurrió en craso abuso de discreción, o aplicación errónea de la ley. En vista de ello, denegamos la expedición del auto de *certiorari* solicitado y devolvemos el asunto al Tribunal de Primera Instancia para que continúe en un proceso ordinario de incumplimiento de contrato.

**IV.**

Por los fundamentos antes expresados, *denegamos* la expedición del auto de certiorari y devolvemos el asunto al Tribunal de Primera Instancia para la continuidad del proceso.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] Apéndice del peticionario, pág. 10.
[22] Apéndice del peticionario, pág. 12.
[23] Apéndice del peticionario, pág. 10.