Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| XIOMARA RIVERA CRUZ, CARLOS MERCED CENTENO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelante<br><br>v.<br><br>ARTURO CENTENO NAVARRO<br><br>Apelado | TA2025AP00003 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV03123<br><br>Sobre: Injunction Preliminar y Permanente, Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de julio de 2025.

Comparecen Xiomara Rivera Cruz, Carlos Merced Centeno y la sociedad legal de gananciales compuesta por ambos (en adelante, Matrimonio Merced-Rivera y/o parte apelante) mediante un *Recurso de Apelación*, para solicitarnos la revisión de la *Sentencia* emitida el 13 de mayo de 2025, y notificada el día 19, del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Caguas.[1] Mediante la *Sentencia* apelada, el foro de instancia desestimó la *Demanda* incoada por la parte apelante, sin perjuicio.

Por los fundamentos que expondremos, se *revoca* la *Sentencia* apelada.

I

El presente caso tuvo su inicio, el 28 de agosto de 2024, cuando la parte apelante interpuso una *Demanda* sobre interdicto preliminar y permanente y daños y perjuicios contra Arturo Centeno

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI,) a la Entrada 29.

Navarro (en adelante, señor Centeno Navarro o apelado).[2] En su pliego, adujo ser dueña en pleno dominio en virtud de un contrato de compraventa de una propiedad sita en el municipio de Caguas, Puerto Rico. Arguyó que el apelado era su vecino por colindar con su propiedad por el lado este. Indicó que el apelado, sin su autorización o permiso alguno, invadió su terreno y construyó un muro que traspasó los límites de la colindancia. Expresó que, dado a lo anterior, se le ha privado el acceso de parte de su propiedad, asunto que fue certificado por el Municipio Autónomo de Caguas, Puerto Rico en el alfanumérico CG2022CV01401.[3] Alegó que, a pesar de las gestiones realizadas, incluyendo una Sentencia en la cual se ordenó la demolición del muro, el apelado se ha negado a actuar. Por otra parte, esbozó que el apelado, se ha dedicado a crear falsas acusaciones en su contra y a iniciar procedimientos judiciales frívolos de naturaleza criminal y civil. Además, acotó haber recibido un incentivo del gobierno el cual le requería realizar unas reparaciones en la propiedad, pero que, dado a las actuaciones del apelado, no las había podido hacer, por lo que podría perder el beneficio. A tenor con lo expuesto, la parte apelante solicitó al foro de instancia que se emitiera una orden de entredicho preliminar y permanente dirigido al apelado y emitiera una sentencia en la cual condenara al apelado al resarcimiento de daños y perjuicios provocados por sus actuaciones.

Recibida la *Demanda*, el 27 de septiembre de 2024, el foro de instancia emitió una *Orden y Citación*, notificada el día 30, del mismo mes y año, en la cual calendarizó la vista de interdicto para el 15 de octubre de 2024, y ordenó el diligenciamiento personal de

---

[2] SUMAC TPI, a la Entrada 1.
[3] *Oficina de Permisos v. Arturo Centeno Navarro*, CG2022CV01401.

la misma al apelado.[4] De igual forma, ordenó la expedición del emplazamiento.[5]

El mismo 27 de septiembre de 2024, pero notificada el 2 de octubre de 2024, el tribunal primario emitió una segunda *Orden*, en la que, en síntesis, le requirió a la parte apelante a mostrar causa por la cual no debía desestimar el remedio interdictal solicitado considerando que, en otro caso, se había concedido un remedio y que allí se podía solicitar su cumplimiento.[6] En ánimos de cumplir con lo ordenado, el 4 de octubre de 2024, la parte apelante presentó una *Moción en cumplimiento de orden*.[7] Expuso, entre otras cosas, que entendía que la percepción del foro de instancia era incorrecta puesto a que previamente no se había otorgado en otro caso un remedio igual al solicitado, de manera que no debía desestimar la solicitud de remedio interdictal. Lo anterior, por cuanto en el caso CG2022CV01401, al cual el foro primario había hecho referencia, únicamente se ventiló una petición presentada por el Municipio de Caguas para que se demoliera un muro construido por la parte apelante sin los permisos reglamentarios y no se adjudicó la controversia sobre la colindancia entre las partes. En respuesta, mediante *Orden* notificada el 15 de octubre de 2024, el foro de instancia dio por cumplida su orden.[8]

De lo que sigue, el mismo 15 de octubre, se celebró la vista de interdicto preliminar.[9] No obstante, en corte abierta el foro de instancia dispuso reseñarla para el 14 de noviembre de 2024,[10] de forma tal que el apelado compareciera representado por abogado. Por otro lado, en la referida vista el foro *a quo* dispuso que la parte

---

[4] SUMAC TPI, a la Entrada 5.
[5] *Íd.*, a la Entrada 7.
[6] *Íd.,* a la Entrada 6.
[7] *Íd.,* a la Entrada 9.
[8] *Íd.,* a la Entrada 10.
[9] *Íd.,* a la Entrada 11.
[10] *Íd.,* a la Entrada 11.

apelante debía enviar nuevamente copia de la demanda por correo electrónico al apelado.

Luego, el 19 de octubre de 2024, la parte apelante instó una *Moción en cumplimiento de orden*, mediante la cual acreditó haber vuelto a notificar la demanda al apelado mediante correo electrónico.[11] Mediante *Orden*, notificada el 20 de octubre de 2024, el foro de instancia dio por cumplida su orden.[12]

Posteriormente, mediante *Orden*, notificada el 8 de noviembre de 2024, el tribunal de instancia transfirió la vista de interdicto preliminar para el 2 de diciembre de 2024.[13] Así las cosas, el 21 de noviembre de 2024, la parte apelante instó una solicitud para que se le anotara la rebeldía al apelado.[14] Por otro lado, días más tarde, el 25 de noviembre de 2024, la parte apelante incoó una *Urgentísima solicitud de turno preferente o de transferencia de vista*.[15] En respuesta, el tribunal de instancia reseñaló la vista para el 10 de enero de 2025.[16]

De ahí, el 12 de diciembre de 2024, la parte apelante presentó una *Urgente Moción reiterando solicitud de anotación de rebeldía*.[17] En su pliego, expuso que el apelado había sido emplazado desde el 9 de octubre de 2024. Además, esbozó que el apelado también compareció a la vista celebrada el 15 de octubre de 2024, y se sometió a la jurisdicción. Expresó, en síntesis, que, aún con el decurso del tiempo, el apelado no había presentado alegación, por lo que procedía la anotación de la rebeldía. Examinada la moción, mediante *Orden*, notificada el 7 de enero de 2025, el tribunal *a quo* anotó la rebeldía al apelado.[18] Además, dejó sin efecto el

---

[11] SUMAC TPI, a la Entrada 13.
[12] *Íd.,* a la Entrada 16.
[13] *Íd.,* a la Entrada 18.
[14] *Íd.,* a la Entrada 21.
[15] *Íd.,* a la entrada 22.
[16] *Íd.,* a la Entrada 23.
[17] *Íd.,* a la Entrada 24.
[18] *Íd.,* a la Entrada 25.

señalamiento de vista y dispuso que emitiría determinación por separado.

De los autos se desprende que, el 15 de enero de 2025, el apelado, por derecho propio instó una moción intitulada *Reconsideración.*[19] En su pliego, solicitó en suma que se dejara sin efecto la anotación de rebeldía. Expresó que la representación legal de la parte apelante le notificó la demanda, el 19 de diciembre de 2024. Por otro lado, junto al escrito presentó en parte, su alegación responsiva. En reacción, el 28 de enero de 2025, la parte apelante presentó una *Réplica a solicitud de reconsideración, solicitud reiterando anotación de rebeldía anotada, solicitud de sanciones y solicitud de desglose y eliminación de escrito.*[20] En síntesis, la parte apelante peticionó que la solicitud de reconsideración fuese denegada, se ordenara el desglose de ciertos documentos y se le impusieran sanciones al apelado.

Siguiendo las incidencias procesales, el 9 de mayo de 2025, la parte apelante presentó una *Urgente moción en solicitud de orden sobre anotación de rebeldía y solicitud de vista en rebeldía.*[21] En su escrito, solicitó al foro de instancia que mantuviese su determinación sobre anotación de rebeldía, diese por admitidas las alegaciones presentadas y señalara vista en rebeldía para determinar la cuantía a conceder en daños a favor de la parte apelante.

Finalmente, el 13 de mayo de 2025, el foro de instancia emitió una *Sentencia*, la cual notificó el 19 de mayo de 2025.[22] Mediante el antedicho dictamen, el tribunal apelado desestimó la demanda incoada por la parte apelante, sin perjuicio. El foro de instancia concluyó que, aun cuando el Tribunal diese por admitidas las

---

[19] SUMAC TPI, a la Entrada 26.
[20] *Íd.,* a la Entrada 27.
[21] *Íd.,* a la Entrada 28.
[22] *Íd.,* a la Entrada 29.

alegaciones bien hechas de la demanda en virtud de la Regla 45.1 de Procedimiento Civil,[23] no procedían los remedios interdictales solicitados por no cumplirse los requisitos de ley.

Subsiguientemente, el 20 de mayo de 2025, el abogado de la parte apelante presentó su solicitud sobre relevo de representación legal.[24] Así, pues, el foro de instancia autorizó el relevo de la representación legal.[25]

En el interín, el 28 de mayo de 2025, la parte apelante incoó una *Moción urgente en auxilio de jurisdicción, solicitud de reconsideración, moción de prórroga de términos y exposición de violaciones procesales y constitucionales.*[26] En su escrito, solicitó que se reconsiderara el dictamen desestimatorio y que se procediera a convocar una vista en rebeldía o, en la alternativa, presentar una moción de sentencia sumaria. En respuesta, mediante *Orden* del 29 de mayo de 2025, notificada al día siguiente, el foro de instancia declaró *No Ha Lugar* la antedicha solicitud.[27]

Insatisfecho, el 16 de junio de 2025, compareció la parte apelante mediante un *Recurso de Apelación* en el cual alzó los siguientes dos (2) señalamientos de error:

> PRIMER ERROR: Erró el TPI al desestimar sin perjuicio la presente causa de acción sin la celebración de una Vista en Rebeldía que permitiera probar las alegaciones contenidas en la Demanda que eran necesarias probar y aclarar, aplicando *motu prop[r]io* defensas afirmativas que no fueron levantadas y por tanto renunciadas por la parte demandada.

> SEGUNDO ERROR: Erró el TPI al desestimar sin perjuicio la presente causa de acción por entender que no se cumplía con los requisitos para una acción interdictal, para lo que tampoco estableció qué requisitos fueron los que no se cumplieron.

Mediante *Resolución,* emitida el 23 de junio de 2025, concedimos a la parte apelada hasta el 16 de julio de 2025, para presentar su alegato en oposición. Habiendo decursado el término

---

[23] Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1.
[24] SUMAC TPI, a la Entrada 30.
[25] *Íd.,* a la Entrada 31.
[26] *Íd.,* a la Entrada 32.
[27] *Íd.,* a la Entrada 33.

concedido a la parte apelada sin que compareciera, procederemos a disponer del presente recurso sin el beneficio de su comparecencia.

II

## A. Recurso de Apelación

La Regla 52.2 (a) de Procedimiento Civil,[28] así como la Regla 13(A) del Reglamento del Tribunal de Apelaciones,[29] disponen que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días, desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello, quiere decir que no admite justa causa, es improrrogable y que su incumplimiento es insubsanable.[30] Por otra parte, es menester acentuar que la correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[31] De manera que, si la sentencia no fue notificada conforme a derecho, el Tribunal de Apelaciones no tendrá jurisdicción para atender la misma, ya que el recurso instado ante este foro será prematuro.[32]

Ahora bien, el término de treinta (30) días para acudir en alzada, antes señalado, puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[33] En tal caso, el término para apelar se contará a partir del archivo en autos de la copia de la notificación de la resolución que resuelve la moción.[34] Esto, a pesar de que la moción se haya declarado sin lugar.

---

[28] 32 LPRA Ap. V, R. 52.2 (a).
[29] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, a la pág. 22, 215 DPR __ (2025).
[30] *Martínez, Inc. v. Abijoe Realty Group Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 309 (1998).
[31] *Abijoe Realty Group Corp.*, supra, a la pág. 7; *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[32] *Berríos Fernández v. Vázquez Botet*, 196 DPR 245, 250-251 (2016).
[33] Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47.
[34] Regla 47 de Procedimiento Civil, *supra*.

De otra parte, precisa señalar que, en grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los tribunales inferiores aplican el derecho a los hechos particulares de cada caso, y si abusaron de su discreción.[35] En consecuencia, el foro apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[36] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[37] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo. Igualmente, se permite intervenir para evitar un perjuicio sustancial.[38]

### B. El *Injunction* Preliminar y Permanente

El recurso de *injunction* es un remedio extraordinario discrecional que procura la expedición por escrito de un mandamiento judicial que le exige a una persona a actuar o le prohíbe realizar determinada conducta que infringe o perjudica los derechos de otra.[39] Dicho de otra manera, se trata de un remedio que busca prohibir u ordenar la ejecución de determinado acto, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona.[40] Asimismo, el *injunction* es un

---

[35] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).
[36] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434 (2013).
[37] *Sierra, Secretario del Trabajo v. Tribunal Superior*, supra, a la pág. 572.
[38] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).
[39] Artículo 675 del Código de Enjuiciamiento Civil de Puerto Rico de 1933 (Código de Enjuiciamiento Civil, 32 LPRA sec. 3421; *E.L.A. v. Asoc. de Auditores*, 147 DPR 669, 679 (1999).
[40] *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010); *E.L.A. v. Asoc. de Auditores*, a la pág. 679.

remedio dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos.[41]

Puesto a que el referido remedio es uno de carácter extraordinario, los tribunales deben otorgarlo únicamente en aquellos casos en los que no existe otro remedio adecuado o cuando el remedio existente en el curso básico de la ley es inadecuado.[42] Cabe destacar, además, que nuestro Tribual Supremo ha establecido que para determinar si en un caso procede el recurso extraordinario de *injunction,* debe existir un agravio de patente intensidad al derecho de la persona que reclame urgente reparación.[43] Igualmente, la parte promovente deberá demostrar que, de no concederse el *injunction,* sufriría un daño irreparable.[44] Es decir, un daño que no puede ser apreciado con certeza ni puede ser debidamente compensado por cualquier indemnización que se consiguiera recobraren un pleito en ley.[45]

De otro lado, precisa destacar que la regulación del *injunction* descansa principalmente en la Regla 57 de Procedimiento Civil[46] y en los Artículos 675 a 695 del Código de Enjuiciamiento Civil, respectivamente.[47] En específico, la Regla 57 de las Reglas de Procedimiento Civil establece tres (3) modalidades de *injunction,* a saber: (i) el *injunction* permanente; (ii) el *injunction* preliminar, y (iii) el entredicho provisional.[48]

---

[41] *VDE Corporation v. F & R Contractors*, a la pág. 40; R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis Nexis, 2007, a la pág. 463.

[42] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 679; *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 367 (2001).

[43] *VDE Corporation v. F & R Contractors*, supra, a la pág. 40*; Com. Pro. Perm. Bda. Morales v. Alcalde*, 158 DPR 195, 205 (2002).

[44] *VDE Corporation v. F & R Contractors*, supra a la pág. 40*; Misión Ind. P.R. v. J.C.A.*, 142 DPR 656, 681 (1997).

[45] *Misión Ind. P.R. v. J.C.A.*, supra, a la pág. 681.

[46] 32 LPRA Ap. V, R. 57.

[47] Artículos 675 al 695 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3421-3566.

[48] 32 LPRA Ap. V, R. 57.1 y 57.2; *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 486 (2014); *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 679.

En lo referente al auto de entredicho provisional, este puede ser expedido al demandado sin notificación previa y sin que éste haya tenido oportunidad de ser oído, cuando de la petición bajo juramento surja una causa que justifique su expedición.[49] Ahora bien, debido a que este procedimiento afecta el derecho a un debido proceso de ley, sus requisitos son de estricto y riguroso cumplimiento.[50] Por lo tanto, para que pueda ser dictado sin notificación previa, se ha de hacer constar, bajo juramento, aquellos hechos que demuestren que se han de causar perjuicios, pérdidas o daños irreparables al solicitante. antes de que se pueda oír a la parte adversa.[51] Además, el solicitante ha de certificar por escrito al tribunal las diligencias que ha hecho, si alguna, para notificar a la parte contraria de la solicitud de remedio, o las razones en que funda su solicitud para que no se requiera dicha notificación.[52]

Cónsono con lo anterior, "[e]n caso de que se dicte una orden de entredicho provisional sin notificación previa, la moción para un auto de *injunction* preliminar será señalada para ser vista en la fecha más próxima que sea posible y tendrá preferencia sobre todos los demás asuntos, excepto aquellos que sean más antiguos y de la misma naturaleza".[53] Por tanto, "cuando la moción sea llamada para vista, la parte que obtuvo la orden de entredicho provisional procederá con su solicitud de *injunction* preliminar y, si así no lo hace, el tribunal la dejará sin efecto".[54]

Por su parte, el *injunction* permanente requiere la celebración de vista y que, luego del juicio en sus méritos y antes de ordenar el *injunction* permanente, el tribunal de instancia considere: (i) si el

---

[49] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 680.
[50] *Íd.*
[51] Regla 57.1 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 57.1; *E.L.A. v. Asoc. de Auditores,* supra, a la pág. 680.
[52] Regla 57.1 (b) de Procedimiento Civil 32 LPRA Ap. V, R. 57.1; *E.L.A. v. Asoc. de Auditores,* supra a la pág. 680.
[53] Regla 57.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.1.
[54] *Íd.*

demandante ha prevalecido en un juicio en sus méritos; (ii) si el demandante posee algún remedio adecuado en ley; (iii) el interés público involucrado, y (iv) el balance de equidades.[55]

A diferencia del antedicho remedio, el *injunction* preliminar se puede emitir en cualquier momento antes del juicio en su fondo.[56] Este tiene como propósito fundamental conservar el *status quo* hasta que se diluciden las controversias en sus méritos.[57] De esta manera, la orden del *injunction* preliminar evita que la conducta del demandado produzca una situación que convierta la sentencia que finalmente se dicte en académica, o que se le ocasionen daños de mayor consideración al peticionario mientras se ventila el litigio.[58] Para determinar si procede o no conceder un *injunction* preliminar, se deben considerar primordialmente los criterios enumerados en la Regla 57. 3 de Procedimiento Civil. Ellos son:

(1) La naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*;

(2) Su irreparabilidad o la existencia de un remedio adecuado en ley;

(3) La probabilidad de que el promovente prevalezca eventualmente al resolverse el litigio en su fondo;

(4) La probabilidad de que la causa se torne académica de no concederse el *injunction*, y

(5) El posible impacto sobre el interés público del remedio que se solicita.[59]

A la par, deben considerarse los casos especificados en el Artículo 677 del Código de Enjuiciamiento Civil en los cuales puede concederse un *injunction.* Esto son:

---

[55] David Rivé, *Recursos Extraordinarios*, 2da Edición Revisada, Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, PR, págs. 44-45.

[56] *Next Step Medical v. Bromedicon et al.*, supra, a la pág. 486; David Rivé, *op. cit.*, a la pág. 21.

[57] *VDE Corporation v. F & R Contractors*, supra, a la pág. 41; *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994).

[58] *VDE Corporation v. F & R Contractors*, supra, a la pág. 41*; Mun. de Ponce v. Gobernador*, supra, a la pág. 784.

[59] Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V., R. 57.3; *VDE Corporation v. F & R Contractors*, supra, a las págs. 40-41; *Rullán v. Fas Alzamora*, 166 DPR 742, 764 (2006).

(1) Cuando resultare de la petición que el peticionario tiene derecho al remedio solicitado, y dicho remedio, o parte del mismo, consistiere en impedir la comisión o continuación del acto denunciado, bien por un período de tiempo limitado, o perpetuamente.

(2) Cuando de la petición o declaración jurada resultare que la comisión o continuación de algún acto, durante el litigio, habrá de causar pérdidas o daños de consideración o irreparables a alguna de las partes.

(3) Cuando, durante el litigio, resultare que una de las partes está cometiendo, o amenaza cometer, o que se dispone a cometer, o a procurar o permitir que se cometa, algún acto de contrario a los derechos de otra de las partes, con respecto al asunto en litigio y tendente a hacer que sea ineficaz la sentencia.

(4) Cuando una compensación pecuniaria no habría de proporcionar adecuado remedio.

(5) Cuando fuere sumamente difícil precisar la cuantía de la compensación que habría de proporcionar remedio adecuado.

(6) Cuando la restricción fuere necesaria para impedir una multiplicidad de procedimientos judiciales.[60]

Finalmente, huelga puntualizar que la concesión de un *injunction* descansa en la sana discreción del Tribunal.[61] Por ende, la decisión que tome el foro primario no debe ser revocada por este Tribunal Apelativo a menos que se demuestre que el tribunal *a quo* abusó de su facultad discrecional.[62]

III

En el recurso apelativo ante nos, la parte apelante le imputa al foro primario la comisión de dos (2) errores. Específicamente, arguye que el foro primario erró al desestimar su causa de acción sin que se celebrara una vista en rebeldía que le permitiera probar sus alegaciones y al aplicar defensas afirmativas *motu proprio* que entiende renunciadas por el apelado. Asimismo, sostiene que el foro *a quo* incidió al entender que no se cumplieron los requisitos para proceder con la causa de acción interdictal, sin establecer cuáles

---

[60] Artículo 677 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423.
[61] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 680.
[62] *Íd.*; *Delgado v. Cruz*, 27 DPR 877, 880 (1919).

requisitos no se cumplieron. En otras palabras, que el foro primario erró al desestimar la causa de acción sin fundamentar su determinación. Por estar estos dos (2) errores íntimamente relacionados entre sí, procederemos a discutirlos conjuntamente.

Según reseñamos previamente, este caso inició cuando la parte apelante interpuso una *Demanda* sobre interdicto preliminar y permanente en contra del apelado. En su escrito, adujo que el apelado, quien era su vecino, construyó un muro que traspasó los límites de su colindancia e invadió su terreno. Así, pues, la parte apelante solicitó al tribunal de instancia que le concediera el remedio interdictal peticionado, a los fines de que, entre otras cosas, el apelado cesara de realizar cualquier trabajo de construcción en la colindancia o más allá de su colindancia, y que, a su vez, lo condenara al resarcimiento de daños y perjuicios.

Examinada la *Demanda*, el tribunal calendarizó la vista de interdicto, y apercibió al apelado que, de no comparecer a la misma, tomaría su incomparecencia como una aceptación de los hechos alegados y concedería el remedio solicitado sin citarle ni oírle.[63] Posteriormente, el tribunal de instancia emitió una *Orden* en la cual le requirió a la parte apelante que mostrara causa por la cual no se debía desestimar su remedio interdictal, pese a que había otro caso relacionado en el cual podía solicitar que otorgara un *injunction*. En cumplimiento, la parte apelada presentó una moción con sus argumentos. Así, pues, luego de dar por cumplida su *Orden*, el tribunal *a quo* procedió a celebrar la vista de interdicto preliminar, la cual había ya calendarizado previamente. A esta vista comparecieron **todas** las partes del título. No obstante, en corte abierta, el juzgador de instancia dispuso que recalendarizaría la misma para dar oportunidad al apelado para que compareciera con

---

[63] SUMAC TA, a la Entrada Núm. 5.

representante legal. Posteriormente, transfirió la vista para una fecha posterior. En la orden de transferencia de vista, reseñó que "el tribunal motu proprio se [vio] en la necesidad de dejar sin efecto el señalamiento [anterior]". [64]

Subsiguientemente, ocurrieron dos (2) eventos procesales, el *primero* fue que la parte apelante solicitó que se le anotara la rebeldía al apelado en cuanto a la demanda. Alegó en su escrito que, pese a que este había comparecido a la vista de interdicto preliminar, a la fecha, aún no había presentado su alegación responsiva. El *segundo* evento procesal fue que la parte apelante presentó una solicitud de transferencia de vista, la cual fue concedida por el foro primario.

Luego de que la parte apelante presentó una moción reiterando su solicitud de anotación de rebeldía, el tribunal de instancia, mediante *Orden,* convino en anotarle la rebeldía al apelado. En esta misma *Orden,* dejó sin efecto el señalamiento de vista *-de interdicto preliminar-* y dispuso que emitiría una determinación por separado. En reacción, el apelado, por derecho propio, solicitó que se dejara sin efecto la anotación de rebeldía. En respuesta, la parte apelada presentó dos (2) escritos, uno en el que le solicitó al tribunal que declarara sin lugar la reconsideración interpuesta por el apelado, y otro en el que peticionó que se mantuviera la anotación en rebeldía, se dieran por admitidas las alegaciones y se señalara vista en rebeldía.

Luego de evaluar los antes señalados escritos, el tribunal *a quo* en vez de limitarse a denegar o conceder lo solicitado por las partes *-entiéndase, levantar la rebeldía o mantener la rebeldía y señalar la vista-*, optó por emitir la *Sentencia* que nos ocupa, en la cual desestimó la acción de la demanda incoada por la parte

---

[64] SUMAC TPI, Entrada Núm. 18.

apelante en su totalidad, sin perjuicio. En suma, concluyó que, de una lectura de las alegaciones de la demanda, entendió que no procedían los remedios interdictales. Inconforme, la parte apelante solicitó reconsideración, la cual fue declarada *No Ha Lugar* por el foro primario. Es por lo anterior, que la referida parte acude ante esta Curia en solicitud de nuestra intervención con el dictamen apelado.

Conforme expusimos en nuestra previa exposición doctrinal el *injunction* es un remedio extraordinario que, de concederse, supone la expedición de un mandamiento judicial que le exige a una persona evitar o realizar determinado acto. [65] Particularmente, el *injunction* preliminar puede concederse en cualquier momento antes del juicio en su fondo, y su propósito es mantener el *status quo* mientras se dilucidan las controversias en sus méritos.[66] Ahora bien, los actos que se prohíben o se ordenan realizar mediante el *injunction* deben ser cuestiones futuras que amenazan ser cometidas o que se anticipan que serán cometidas.[67] Por tanto, uno de los requisitos a evaluar para determinar la procedencia del *injunction* es que la causa no sea académica.[68] En otras palabras, que no sea una cuestión que ya ocurrió, de manera que, haya otro remedio en el curso básico de la ley más apropiado que el *injunction* para atender la misma.[69] Igualmente, es esencial, para que proceda la concesión del remedio interdictal, que la parte promovente demuestre que, de no concederse el *injunction*, sufrirá un daño irreparable. [70] Para que

---

[65] Artículo 675 del Código de Enjuiciamiento Civil, *supra*; *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 679

[66] *Next Step Medical v. Bromedicon et al.*, supra, a la pág. 486; David Rivé, *op. cit.*, a la pág. 21.; *VDE Corporation v. F & R Contractors*, supra, a la pág. 41; *Mun. de Ponce v. Gobernador*, supra, a la pág. 784.

[67] *VDE Corporation v. F & R Contractors*, supra, a la pág. 40; R. Hernández Colón, *op. cit.*, a la pág. 463.

[68] Regla 57.3 (4) de Procedimiento Civil, *supra*; *VDE Corporation v. F & R Contractors*, supra, a las págs. 40-41; *Rullán v. Fas Alzamora*, supra, a la pág. 764.

[69] *E.L.A. v. Asoc. de Auditores*, supra, a la pág. 679; *Mun. de Loíza v. Sucns. Suárez et al.*, supra, a la pág. 367.

[70] *VDE Corporation v. F & R Contractors*, supra a la pág. 40*; Misión Ind. P.R. v. J.C.A.*, supra, a la pág. 681.

los tribunales puedan validar que las anteriores circunstancias están presentes en el caso ante su consideración, deberán celebrar una vista en la cual las partes puedan presentar prueba en apoyo y en oposición a tal solicitud.[71] Conforme exigen las Reglas de Procedimiento Civil, la moción para un auto de *injunction* preliminar deber ser señalada para ser vista en la fecha más próxima posible y tener preferencia sobre todos los demás asuntos, excepto aquellos que sean más antiguos y de la misma naturaleza.[72]

Dicho lo anterior, puntualizamos que esta Curia no ha de intervenir con los foros primarios en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que: (i) actuaron con prejuicio o parcialidad; (ii) incurrieron en un craso abuso de discreción; o (iii) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[96] Esto, puesto a que no debemos pretender administrar ni manejar los casos atendidos por el foro primario.[73] De manera que, de ordinario, debe prevalecer el criterio del juez de instancia.[74] Ahora bien, a raíz de todo lo anterior, entendemos que el proceder del foro de instancia al desestimar la demanda en su totalidad, sin antes celebrar una vista de *injunction* preliminar, y al limitarse a una lectura de las alegaciones de la *Demanda* para evaluar la procedencia del remedio interdictal, constituyó un craso abuso de discreción que requiere la intervención de este foro apelativo. Más aún cuando a la parte apelante, además de solicitar en su *Demanda* la concesión de un *injunction,* también presentó una reclamación de daños y perjuicios. Es decir, solicitó un remedio extraordinario y otro por la vía ordinaria.

---

[71] *Mun. de Ponce v. Gobernador,* supra, a la pág. 784.
[72] Regla 57.1 (b) de Procedimiento Civil, *supra.*
[73] *SLG Zapata-Rivera v. JF Montalvo,* supra, a la pág. 434.
[74] *Sierra, Secretario del Trabajo v. Tribunal Superior,* supra, a la pág. 572.

Reconocemos que, según se desprende del trámite aquí reseñado, al apelado se le anotó la rebeldía. Ahora bien, lo anterior, no era impedimento para que el juzgador de instancia celebrara la vista de *injunction*. Sabido es que, si para dictar sentencia se hace necesario, entre otras cosas, determinar el importe de los daños o comprobar la veracidad de cualquier aseveración mediante prueba o hacer una investigación de cualquier otro asunto, se deberán celebrar las vistas que se crean necesarias y adecuadas, independientemente, de que alguna de las partes esté en rebeldía.[75] Incluso, según adelantamos, luego de que el tribunal *a quo* le anotó la rebeldía al apelado, la parte apelante, entre otras cosas, le solicitó que celebrara una vista en rebeldía, es de esta moción y de otras en las que se le peticionó por una parte dejar sin efecto la anotación de rebeldía y por otra sostenerla, que el tribunal procede a emitir sentencia desestimando la *Demanda* en su totalidad excediendo a lo rogado por las partes.

Es norma harta conocida que, en nuestro ordenamiento jurídico, se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos.[76] A esos efectos, la desestimación únicamente debe proceder cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio.[77] Es nuestro juicio que, según los autos ante nuestra consideración, el tribunal apelado no estaba en posición de determinar si la *Demand*a incoada por la parte apelante carecía de mérito. Menos aún, cuando optó por descartar la trazada ruta del caso y no celebrar la vista de *injunction* correspondiente. De manera que, coincidimos en que la acción tomada por el foro

---

[75] Regla 45. 2 (b) de Procedimiento Civil, 32 LPR. Ap. V, R. 2.
[76] *González Méndez v. Acción Social et al.,* 196 DPR 213, 235 (2016).
[77] *Íd.*

primario fue una arbitraria y, en consecuencia, amerita ser revocada por esta Curia. Consecuentemente, nos es forzoso concluir que los errores esgrimidos por la parte se cometieron, por lo que procede revocar la *Sentencia* apelada y ordenar al tribunal *a quo* a calendarizar la vista de *injunction* preliminar correspondiente, con la correspondiente continuación de los procedimientos. Advertimos que, la determinación que en su día determine el foro *a quo* deberá ser una fundamentada.

IV

Por los fundamentos que anteceden, se *revoca* la *Sentencia* apelada. En consecuencia, se ordena al tribunal de instancia a que a la brevedad posible celebre una vista de *injunction* preliminar, la cual conforme a la Regla 57.1 (b) de Procedimiento Civil debe ser señalada para ser vista en la fecha más próxima posible y tener preferencia sobre todos los demás asuntos, excepto aquellos que sean más antiguos y de la misma naturaleza. A tales efectos, se devuelve el caso al tribunal de instancia para la continuación de los procedimientos. Al amparo de la Regla 18 (B) de nuestro Reglamento,[78] el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[78] Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* supra, a las págs. 34-35.